**COLLINS & AIKMAN PRODUCTS CO., Plaintiff–Appellee,**

v.

**BUILDING SYSTEMS, INC. and U.S. Commercial Floor System, Defendants–Appellants.**

No. 1577, Docket 94–9229.

United States Court of Appeals, Second Circuit.

Argued April 21, 1995.

Decided June 15, 1995.

Vilia B. Hayes, New York City (Norman C. Kleinberg, Andrea de Gorgey, Hughes Hubbard & Reed, of counsel), for plaintiff-appellee.

John M. Aerni, LeBoef, Lamb, Greene & MacRae, New York City (William N. Kammer, Gray Cary Ware & Freidenrich, San Diego, CA, of counsel), for defendants-appellants.

Before: ALTIMARI, JACOBS and CALABRESI, Circuit Judges.

JACOBS, Circuit Judge:

Defendants-appellants Building Systems, Inc. ("BSI") and U.S. Commercial Floor System filed a Statement of Claim with the American Arbitration Association in New York City, alleging wrongful termination of contract and six more enumerated claims against Collins & Aikman Product Co. ("C & A"), a distributor of floor coverings for which BSI had served as sales representative. C & A promptly commenced a special proceeding in New York State Supreme Court, seeking to stay arbitration in respect of all claims other than the one designated as wrongful termination of contract, and won a temporary stay of arbitration pending a hearing on the petition. Soon thereafter, BSI removed the action to federal court, on grounds of diversity, and moved for an order compelling BSI to submit to arbitration on all seven of its claims. After briefing and oral argument, the United States District Court for the Southern District of New York (Sprizzo, J.) entered judgment granting BSI's motion to compel arbitration as to the wrongful termination claim, but denying the motion as to the rest; and (in mirror image) denying C & A's petition to stay arbitration as to the wrongful termination claim, but granting the petition as to the rest. Defendants filed a timely notice of appeal (although defendant U.S. Commercial System thereafter withdrew from the appeal). We have jurisdiction and, after consideration of all arguments presented on appeal, we affirm in part and in part vacate and remand.

## Background

C & A is in the business of marketing floor coverings. In 1977, C & A entered into two substantially similar contracts with BSI (the "1977 Contracts" or the "Contracts"), providing that BSI would be C & A's sales representative in respect of (1) sales to the Church of Jesus Christ of the Latter Day Saints, throughout the United States, and (2) all sales in a multi-state area referred to by the parties as the Rocky Mountain Region. BSI committed itself to use its best efforts to promote and sell C & A products and to avoid promoting or selling any competing products, and C & A in return agreed to pay commissions to BSI. The 1977 Contracts each contained an arbitration clause:

> Any claim or controversy arising out of or relating to this agreement shall be settled by arbitration in the City of New York in accordance with the Rules then obtaining of the American Arbitration Association.

The sole issue in the appeal is the scope of this clause.

The commercial relationship between BSI and C & A was uneventful until early 1988; BSI promoted and sold C & A's products and C & A paid commissions, all in accordance with the Contracts. In or around January 1988, C & A initiated negotiations to acquire BSI in order to bring in-house the promotional and sales services provided by BSI under the Contracts. Supposedly in aid of that transaction, C & A sought information about BSI's business, including customer information and other matters that BSI deemed proprietary. At BSI's request, C & A executed a one-page confidentiality agreement on January 13, 1988 (the "1988 Agreement"), which provides that any business information furnished by BSI would be kept confidential and would not be used for any purpose other than the acquisition talks. The term of the Agreement was two years. The 1988 Agreement did not contain an arbitration provision, nor did it refer to or incorporate the 1977 Contracts.

The acquisition talks lasted for some time, but the transaction never materialized. On July 11, 1990—several months after the 1988 Agreement terminated in accordance with its own terms—C & A gave 30 days' notice by letter of its intent to terminate the 1977 Contracts, and specifying the grounds for the termination. The Contracts were accordingly terminated on August 11, 1990.

In its October 1993 demand for arbitration, BSI alleges that C & A never intended to acquire BSI, and that the 1988 negotiations were a ruse on C & A's part to obtain BSI's proprietary business information so that C & A could take over the roles that BSI performed under the 1977 Contracts. BSI contends that C & A's scheme also involved enticing BSI employees to come to work for C & A, and that C & A defamed BSI's

installer network in order to attract customers away from BSI.

In BSI's Statement of Claim, these allegations are expressed as seven causes of action, which we renumber for convenient reference in this opinion:

(1) wrongful termination of the 1977 Contracts, causing damages of $4,250,000;

(2) fraud in obtaining proprietary information through the 1988 Agreement, allowing C & A to obtain BSI's business without incurring the costs of a buyout;

(3) fraud in the inducement of the 1988 Agreement, for which BSI demands rescission of the Agreement;

(4) breach of C & A's implied duty of good faith and fair dealing in respect of both the 1977 Contracts and the 1988 Agreement, causing damages of $4,250,000;

(5) intentional misrepresentation by C & A in connection with both the 1977 Contracts and the 1988 Agreement, causing damages of $4,250,000;

(6) intentional interference with BSI's employment contracts, causing damages of $4,250,000; and

(7) trade libel of BSI's installer network, causing unspecified damages in addition to the $4,250,000 sought elsewhere.

The district court entered judgment compelling arbitration of the first claim—for wrongful termination of contract—and staying arbitration of the remaining claims. We affirm that part of the district court's judgment that compels arbitration of the first claim, as well as that part of the judgment that stays arbitration of claims two through six. We vacate that part of the judgment that stays arbitration of claim seven, and remand for entry of judgment consistent with this opinion.

### Discussion

■ We review *de novo* a judgment of the district court staying or compelling arbitration. *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir.1987). In deciding this matter, we assume that BSI's allegations are true. *See id.* (in deciding arbitrability, court is to look to allegations of party demanding arbitration and—if they fall within the scope of the parties' agreement—court should compel arbitration, no matter how frivolous allegations appear to be).

■ Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract. To implement this understanding, and "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," the Congress adopted the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq. Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219–20, 105 S.Ct. 1238, 1241–42, 84 L.Ed.2d 158 (1985). That Act provides that a "written provision in ... a contract evidencing a transaction ... to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"[F]ederal policy strongly favors arbitration as an alternative dispute resolution process." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,* 923 F.2d 245, 248 (2d Cir.), *cert. dismissed,* 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991). We are instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Accordingly, "[f]ederal policy requires us to construe arbitration clauses as broadly as possible." *Threlkeld,* 923 F.2d at 250 (internal quotation and citation omitted). We will compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal quotation and citation omitted).

These are rules of construction, however, and what we construe is a contract. Accordingly, federal law "does not require parties to arbitrate when they have not agreed to do so...." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Federal law "simply requires courts to enforce privately negotiat-

ed agreements to arbitrate, like other contracts, in accordance with their terms." *Id.*

The crux of this dispute is BSI's allegation that C & A schemed to take without payment the profitable business that BSI had built pursuant to the 1977 Contracts. Allegedly, C & A implemented this scheme by feigning interest in acquiring BSI, so it could obtain proprietary information during due diligence—such as BSI's customer lists, marketing strategies, etc.—that C & A could use to replicate internally the functions previously performed by BSI. Because the 1988 Agreement was enforceable for two years, C & A simply waited until that Agreement expired before creating the infrastructure needed to perform internally the functions that BSI had performed for commissions under the 1977 Contracts. After that phase was completed, C & A had only to terminate the 1977 Contracts in order to displace BSI. C & A consolidated its hold on BSI's business by hiring BSI employees and spreading negative information regarding BSI's network of installers.

■ It is undisputed that many of these allegations would support the claim for wrongful termination of the 1977 Contracts. As the district court held, the wrongful termination claim is squarely within the scope of the arbitration clauses contained in those Contracts. The parties contest which (if any) of the other six claims enumerated in BSI's Statement of Claim are covered by the arbitration clauses.

■ At the outset, we can quickly dispose of one argument: BSI contends that, because one of the claims is clearly arbitrable, and because all of the claims are related to a single set of facts, federal policy disfavors a bifurcation of proceedings in which some claims are presented to arbitrators and some are decided by a court of law. This argument is frivolous. The Supreme Court has directly addressed and soundly rejected it: "The preeminent concern of Congress in passing the [Arbitration] Act was to enforce private agreements ... and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation...." *Byrd,* 470 U.S. at 221, 105 S.Ct. at 1243. If some claims are non-arbi-

trable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court. Indeed, there is no reason why, in a proper case, we cannot sever even a part of a claim, where that claim raises both arbitrable and non-arbitrable issues. We will apply these principles to claims two through seven of the Statement of Claims.

### A. *1988 Agreement: Fraud and Rescission.*

BSI's second claim (fraudulent obtaining of proprietary information) and its third claim (rescission) are pleaded in terms of the 1988 Agreement, and seem to seek relief in respect of that Agreement. C & A argues that the 1988 Agreement has no arbitration clause and therefore cannot be the subject of arbitration. BSI argues that the Agreement was simply a tool in C & A's scheme to deprive BSI of its benefits under the 1977 Contracts, and that the 1988 Agreement therefore "aris[es] out of or relat[es] to" the 1977 Contracts.

■ We have stated that a court should decide at the outset whether "the arbitration agreement [is] broad or narrow." *Prudential Lines, Inc. v. Exxon Corp.,* 704 F.2d 59, 63 (2d Cir.1983). If broad, then there is a presumption that the claims are arbitrable. *See id.* at 64. The clause in this case, submitting to arbitration "[a]ny claim or controversy arising out of or relating to th[e] agreement," is the paradigm of a broad clause. *See Threlkeld,* 923 F.2d at 251. Thus, under *Prudential Lines,* these claims are presumptively arbitrable.

■ Of course, there can be no such presumption in respect of the 1988 Agreement, which has no arbitration clause. However, although claims two and three seek relief under the 1988 Agreement, our analysis is not controlled by the characterization of them in the pleading. Instead, we look to the conduct alleged and determine whether or not that conduct is within the reach of the 1977 arbitration clause:

In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the allegations in the complaint rather than the

legal causes of action asserted. *If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements*, then those claims must be arbitrated, whatever the legal labels attached to them.

*Genesco*, 815 F.2d at 846 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 622 n. 9, 624 n. 13, 105 S.Ct. 3346, 3351 n. 9, 3352 n. 13, 87 L.Ed.2d 444 (1985)) (emphasis added).

■ We must then view the second and third claims, notwithstanding the invocation of the 1988 Agreement, in terms of whether they implicate the 1977 Contracts. Our goal is always to enforce the agreement to arbitrate on its terms:

> In construing arbitration clauses, courts have at times distinguished between 'broad' clauses that purport to refer all disputes arising out of a contract to arbitration and 'narrow' clauses that limit arbitration to specific types of disputes. If a court concludes that a clause is a broad one, then it will order arbitration and any subsequent construction *of the contract and of the parties' rights and obligations under it* are within the jurisdiction of the arbitrator.

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir.1988) (citations omitted) (emphasis added).

■ The second and third claims can be read in different ways: as seeking relief under contractual rights created in 1988, or as an episode in a fraudulent scheme to deprive BSI of its rights under the 1977 Contracts. BSI is concerned that the district court judgment staying arbitration of these claims may be deemed to foreclose any showing at arbitration that the 1988 Agreement was an instrument for C & A's wrongful termination of the 1977 Contracts; and C & A is concerned that an order requiring the arbitration of these claims might authorize the grant of relief in respect of its 1988 undertakings. Both concerns arise from the pleading style of the Statement of Claims, which offers particulars of the claim for wrongful termination of the 1977 Contracts, but tries to characterize some or all of those particulars in terms of other causes of action. In this way, both parties have been drawn into a debate over labels.

The question is not whether the second and third claims arise under the 1988 Agreement, which has no arbitration clause; the question is whether these claims plead conduct that "aris[es] out of or [is] related to" the 1977 Contracts, which does have such a clause. To the extent that these claims (no matter how they are labeled) allege conduct that violated the 1977 Contracts, they would be arbitrable (even if they are not arbitrable as separate causes of action) in the sense that the *allegations* embedded within the claims have potential bearing on a claim for wrongful termination of the 1977 Contracts. BSI points to these embedded allegations, and claims the right to arbitrate. If there were no wrongful termination claim, the district court would be required to compel arbitration of these claims, after sorting out allegations and claims for relief that are cast in terms of claims arising under the 1988 Agreement. However, the determinative fact is that the district court judgement compels arbitration of the wrongful termination claim. The Statement of Claim alleges that the 1988 negotiations, the 1988 Agreement, and other ensuing events, were part of a course of conduct leading to the wrongful termination, and show why and how C & A breached its obligations under the 1977 Contracts. Having paved the way for arbitration of that capacious claim, the district court had no need to edit the second and third claims, and cast them in terms of BSI's rights under the 1977 Contracts, so that they could be arbitrated as separate counts rather than as particulars of the wrongful termination of contract claim already deemed arbitrable.

**B.** *1977 Contracts & 1988 Agreement: Bad Faith and Fraud.*

■ Similar principles apply to BSI's fourth claim (breach of the duties of good faith and fair dealing) and its fifth claim (fraud), each of which is pleaded in terms of obligations under the 1977 Contracts *and* under the 1988 Agreement. To the extent that these claims arise out of or relate to the 1977 Contracts, the allegations will be grist

for the arbitration. To the extent that these claims seek relief under the 1988 Agreement for conduct that does not arise out of or relate to the 1977 Contracts, they are not arbitrable. Once the district court compelled arbitration of the claim for wrongful termination of contract, the court had no need to edit the fourth and fifth claims so that they would be arbitrable insofar as they pertain to the 1977 Contracts, but not as they seek relief under the 1988 Agreement. The court's refusal to order arbitration of these claims cannot be deemed an evidentiary preclusion of allegations contained therein that plead particulars of the wrongful termination of contract.

## C. *Tortious Interference.*

▮ The same approach resolves the arbitrability of BSI's sixth claim, for tortious interference with its employment contracts. BSI argues that C & A's tortious conduct was part of the effort to oust BSI from its role under the 1977 Contracts, and that this allegation therefore should be admissible in the arbitration proceeding. However, we have previously held, in a case with substantial parallels to this one, that a claim for tortious interference with employment contracts "does not 'arise under' or 'relate to'" a separate sales agreement. *Genesco,* 815 F.2d at 856. In that case, Genesco alleged that the defendant had engaged in a fraudulent scheme to sell defective goods to Genesco. As part of the scheme, the defendant allegedly enlisted Genesco's vice president of purchasing. We held that most of Genesco's claims were arbitrable. However, relying on *Altshul Stern & Co. v. Mitsui Bussan Kaisha, Ltd.,* 385 F.2d 158 (2d Cir.1967), we concluded that the employment contracts were third party contracts with no logical connection to the sales agreements containing the arbitration clauses. On this basis, we concluded that a claim for tortious interference with the employment contracts was not arbitrable.

*Genesco* governs here, and therefore we hold that this claim is not arbitrable. However, as in claims two through five, BSI may introduce evidence of this conduct to support its claim for wrongful termination of contract.

## D. *Trade Libel.*

A slightly different result obtains in respect of BSI's claim for trade libel of its installer network. Here, BSI alleges that, both before and after the termination of the 1977 Contracts, C & A impugned the workmanship of BSI's installers, as part of its effort to displace BSI's role under the Contracts in respect of BSI's customers and geographic regions. We conclude that this tort claim, at least insofar as it implicates conduct in aid of the termination of the Contracts, is arbitrable.

In *Genesco,* the plaintiff had also asserted a claim of unfair competition, based on its theory "that the defendants conspired with one of its employees to destroy its business through the systematic acceptance of overcharges and unmarketable goods." 815 F.2d at 855. We held that this tort claim was arbitrable, reasoning that the "claim was not 'wholly independent of the contract', and that [the plaintiff] could not 'avoid the broad language of the arbitration clause by the casting of its complaint in tort.'" *Id.* (quoting *Altshul Stern,* 385 F.2d at 159).

▮ The same reasoning applies in this case. To the extent that BSI's allegation of trade libel is in respect of conduct by C & A prior to the termination, or as part of C & A's efforts immediately following the termination to consolidate in its hands the contract benefits it had promised BSI, we hold that the tort claim is arbitrable. BSI's allegation, in effect, is that C & A approached BSI's customers and told them that the workmanship of BSI's installers was of a low quality. This clearly alleges conduct that would be wrongful in respect of the subject matter of the 1977 Contracts. Significantly, although the wrongs alleged implicate the contract termination claim, this libel claim could open C & A to liability for additional damages, as BSI asserts in its Statement of Claim. To the extent that C & A's defamation of BSI's installer network caused harm to BSI beyond its loss under the Contracts, C & A may be liable to BSI on the theory (and to the extent) that such conduct "relates

to" the 1977 Contracts. The mere fact that this is a tort claim, rather than one for breach of the Contracts, does not make the claim any less arbitrable. *See, e.g., Shearson/American Express v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (claims for violations of Securities Exchange Act of 1934 and RICO arbitrable); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (antitrust claims arbitrable).

■■■ The federal arbitration statute "requires that we rigorously enforce agreements to arbitrate." *Byrd,* 470 U.S. at 221, 105 S.Ct. at 1242–43. Libel for commercial purposes that is part of an effort to breach a contract is an arbitrable claim if the contract contains a broad arbitration clause. We therefore vacate that part of the district court's order staying arbitration of this claim.

E. *Summary.*

In short, the district court has ordered arbitration of a broad claim for wrongful termination of two perennial contracts. The remaining six claims may be arbitrable to the extent that they are particulars of that overarching claim, or allege torts committed in furtherance of that termination. We thus hold that the task of determining whether a claim or a set of claims "arises out of or relates to" the particular contract in which the arbitration clause is found was properly determined by the district court. But the arbitrator is the person who will decide whether the six remaining claims particularize wrongs arising out of the 1977 Contracts (indeed, whether there is any wrong at all). This approach is entirely faithful to the federal policy favoring arbitration, as well as to our prior precedents. "We will order arbitration if the arbitration clause is broad and if the party seeking arbitration has made a claim that on its face is governed by the contract...." *Associated Brick Mason Contractors of Greater N.Y., Inc. v. Harrington,* 820 F.2d 31, 35 (2d Cir.1987). Reading *Harrington, Prudential Lines, McDonnell Douglas Finance,* and *Genesco* together, we conclude: if the arbitration clause is broad, there arises a presumption of arbitrability;

if, however, the dispute is in respect of a matter that, on its face, is clearly collateral to the contract, then a court should test the presumption by reviewing the allegations underlying the dispute and by asking whether the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. If the answer is yes, then the collateral dispute falls within the scope of the arbitration agreement; claims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement.

Therefore, the district court was correct in compelling arbitration of the wrongful termination claim. It was equally correct to stay arbitration of claims two through six. Nothing in the district court's order bars BSI from introducing evidence in respect of the factual allegations contained in the other claims. As to claim seven, the same analysis leads us to vacate the district court's stay of arbitration.

At oral argument, both parties conceded a common concern: BSI stated that it simply wanted to be able to fully arbitrate the wrongful termination claim, including the introduction of all evidence relevant to it; C & A stated that it had no objection to arbitrating that claim and that, in respect of the allegations in the other claims, it merely wanted assurance that the arbitrator would not be permitted to go beyond the scope of the 1977 Contracts in rendering a decision (and, possibly, a damage award). The order of the district court, as modified by this opinion, will adequately meet these concerns.

### Conclusion

For the foregoing reasons, the judgment of the district court is vacated to the extent that it stays arbitration of claim seven, and remanded for entry of judgment consistent with this opinion.