DOCTOR'S ASSOCIATES, INC., Plaintiff,

v.

Terry QUINN, Defendant.

No. Civ. 3:98CV2022 (PCD).

United States District Court, D. Connecticut.

March 3, 1999.

Kevin M. Kennedy, Wiggin & Dana, New Haven, CT, for plaintiff.

Nicholas E. Wocl, Brenden P. Leydon, Tooher & Wocl, Stamford, CT, for defendant.

*RULING ON PETITION TO COMPEL ARBITRATION AND MOTION FOR INJUNCTION*

DORSEY, District Judge.

This case involves a petition to compel arbitration and a motion for injunction to prevent defendant's suit against plaintiff in the U.S. District Court for the Southern District of Ohio, Eastern Division ("Ohio complaint") from going forward.

## I. BACKGROUND

Plaintiff is the national franchisor of "Subway" sandwich shops. Defendant is an Ohio resident who acted as a development agent for plaintiff. Jurisdiction rests on diversity under 28 U.S.C. § 1332.

On or about August 17, 1983, the parties entered into a development agent agreement. The parties signed two other development agent agreements, on approximately June 11, 1984 and September 1, 1987. ("DA Agreements"). The DA Agreements grant defendant the right, under certain terms and conditions, to assist plaintiff and its affiliates in developing Subway franchises. The nature of the agreement is that defendant operates as an independent contractor who is responsible for recruitment of potential franchisees; recommendations to plaintiff on approval of franchisees; identification and assistance in selection of sites for Subway shops; monitoring the performance of franchisees through regular store inspections; and providing operating advice to franchisees.

The DA Agreements contain an arbitration clause stating that parties to an agreement must arbitrate any claims "arising out of or related to" the agreements or their breach.

In October 1995, defendant alleges that plaintiff was threatened with litigation by owners of Subway franchises in Dayton, Ohio. Petition to Compel Arbitration, Ex. B, Ohio Complaint at ¶ 1. Due to these threats, plaintiff asked defendant "(with whom it has had long standing business

relationships)" to purchase the franchises and related property from the owners with funds it loaned defendant, after which plaintiff[1] would receive a release from the owners. Id. at ¶ 2. Defendant was to operate the franchises on an interim basis until they could be resold. Defendant alleges that he did not want to purchase the franchises and particularly refused to do it unless plaintiff agreed to share any losses resulting from the transaction. Id. at ¶ 3.

In March 1996, faced with threats of immediate litigation, plaintiff "in order to induce [defendant] to immediately purchase the franchises from the Dayton owners, ... promised and represented that if [defendant] immediately purchased the franchises" they would enter into an agreement for the sharing of losses resulting from the purchase, interim operation and sale of the franchises and related property. Id. at ¶ 5. Based on this oral promise, defendant purchased the franchises and plaintiff received a general release. Id.

Defendant operated the franchises for an interim period and then resold the franchises and related property. Defendant claims he suffered more than $200,000 of loss from the operation and resale of the property. Defendant alleges that plaintiff has "failed and refused to enter into an arrangement satisfactory" to defendant for the loss sharing. Id. at ¶ 7. Defendant's suit alleges claims of promissory estoppel, fraud and/or negligent misrepresentation. Id. at 3.

Defendant filed the lawsuit in May 1998 and it was subsequently removed to a federal district court in the Southern District of Ohio. In October 1998, plaintiff filed a demand for arbitration with the American Arbitration Association and the instant Petition to Compel.

## II. DISCUSSION

Federal arbitration policy views arbitration agreements as contracts that are enforceable in the same manner as any other contract. *Collins & Aikman Products Co. v. Building Systems,* 58 F.3d 16, 19 (2d Cir.1995). The allegations of the party demanding arbitration are taken as true for the purposes of this motion. *See id.* (when deciding arbitrability, court is to look to allegations of party demanding arbitration to see if they fall within the scope of the parties' agreement). Federal policy looks favorably on arbitration as an alternative dispute resolution process. *Id.* (internal citation omitted).

> We are instructed that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Accordingly, federal policy requires us to construe arbitration as broadly as possible. We will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Collins,* 58 F.3d at 19 (internal quotations and citations omitted). Nevertheless, under the rules of contract construction, parties are not required to arbitrate when they have not agreed to do so. *Id.*

The first step in determining whether a claim is subject to arbitration is in deciding whether the arbitration agreement is broad or narrow. *Id.* at 21 (citing *Prudential Lines v. Exxon Corp.,* 704 F.2d 59, 63 (2d Cir.1983)). The clause at issue here, submitting to arbitration "any controversy or claim arising out of or relating to this Agreement or the breach thereof," is a broad arbitration clause. *Id.* With a broad arbitration clause, there is a presumption that the claims are arbitrable. *Id.*

> [I]f, however, the dispute is in respect of a matter that, on its face, is clearly collateral to the contract, then a court

---

1. Plaintiff argues that the threatened litigation would also have exposed defendant to legal liability in his role as a Subway development agent for that territory. Thus, defendant also benefited from the release.

should test the presumption by reviewing the allegations underlying the dispute and by asking whether the claim alleged implicates issues of contract construction or the parties rights or obligations under it. If the answer is yes, then the collateral dispute falls within the scope of the arbitration agreement; claims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement.

*Collins,* 58 F.3d at 23.

■ Plaintiff argues that defendant should be compelled to arbitrate the claims in the Ohio complaint because they arise out of or relate to the DA Agreements or the Franchise Agreements the parties entered into after defendant purchased the franchises from the owners. The Franchise Agreements contain the same arbitration clause. Defendant alleges that the Ohio lawsuit is based solely on the oral promise of loss sharing and the terms of the oral agreement, which are separate and distinct from the terms of the DA and Franchise Agreements. Defendant argues that the resolution of any dispute relating to the facts and circumstances underlying the oral agreement is unrelated to any written agreement containing arbitration clauses between the parties. The Ohio complaint does not allege that the DA or Franchise Agreements were breached or that any of the factual allegations in the complaint were in the context of his role as a development agent. Additionally, defendant claims that the Franchise Agreements cannot govern the resolution of the dispute because they were signed after the oral agreement.

■ In determining whether a specific claim falls within the scope of the arbitration agreement, we look to the conduct alleged in the complaint rather than the characterization of it in the pleading or the legal causes of action asserted therein. *Collins,* 58 F.3d at 20–21 (internal citations omitted). This dispute clearly arises out of defendant's role as a development agent for plaintiff. Though the Ohio complaint carefully omits any reference to the DA or Franchise Agreements and does not allege their breach, it states, "[b]ecause of these threats of litigation, defendant [DAI] asked plaintiffs [Quinn] (with whom it has had long standing business relationships) to purchase the franchises and related property ..." Ohio Complaint at ¶ 2. DAI would not have approached Quinn to purchase and temporarily run the franchises but for his role as a development agent for DAI.

However, the alleged oral agreement appears to be collateral to the DA Agreement, in that the purchase and interim operation of franchises from failing franchise owners is not something that is explicitly provided for in the DA agreement, though it could arguably fall under the general responsibilities listed in the DA Agreement. Applying the *Collins* test, in reviewing the allegations underlying the dispute and analyzing whether the claim alleged implicates issues of contract construction or the parties' rights or obligations under it, defendant is correct in asserting that a court would look to the alleged oral agreement for loss sharing in resolving this dispute. But it is hard to see how a court could then forego any consideration of defendant's role as development agent and his duties outlined in the DA Agreement in resolving the dispute over the oral agreement. "The Development Agent agrees to: a. be responsible for all activities involved in the development and servicing of stores including, but not limited to ..." (DA Agreement at ¶ 2) a. Defendant argues that the franchise purchase and operation were in no way contemplated and provided for in the DA Agreement. Plaintiff agrees, arguing that "DAI is not obligated under the DA Agreements to compensate respondent for any additional losses he may have suffered in connection with the purchase, operation and resale of the franchises." Petition to

188

Compel Arbitration, Ex. C, Demand for Arbitration at 2.

 One can see how defendant's role as development agent and his rights and obligations as defined in the DA Agreement will be an issue in the Ohio suit. For defendant to show that the franchise purchase and operation was based on separate and distinct terms and an agreement unrelated to the DA or Franchise Agreements, the terms of the DA Agreement, at least, will need to be analyzed. "If the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them.'" *Collins,* 58 F.3d at 21 (quoting *Genesco v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987)). Again, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. As shown above, since the arbitration clause is susceptible to an interpretation that covers the asserted dispute, plaintiff's motion is granted.

## III. CONCLUSION

For the previous reasons, the Motion for Preliminary Injunction (doc. 2) and the Petition to Compel Arbitration are **granted.** The clerk shall close the file.

SO ORDERED.

### *ORDER FOR INJUNCTION*

The Court, having heard the parties, having granted the Petition to Compel Arbitration under Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, and having determined that DAI's arbitration rights will suffer immediate, substantial and irreparable harm if defendant's action in the U.S. District Court for the Southern District of Ohio, Eastern Division, is not enjoined, it is hereby

ORDERED that defendant, his agents, attorneys, servants and employees, and all other persons in active concert or participation with him, is enjoined from prosecuting the removed federal court action pending in the U.S. District Court for the Southern District of Ohio, Eastern Division, entitled *Quality Sandwiches of Ohio, Inc. and Terry Quinn v. Doctor's Associates, Inc.,* Case No. C2 98–620, until further order of this Court; and it is further:

ORDERED no bond shall be required in the circumstances of this case.

SO ORDERED.