This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DOCTOR'S ASSOCIATES INC.,**

Plaintiff/Counter-Defendant-Appellant,

v.                                                                              **NO. 33,997**

**JOSE LUIS CARBONELL and
VICTORIA CARBONELL,**

Defendants/Counter-Plaintiffs-Appellees,

and

**JOSE LUIS CARBONELL and
VICTORIA CARBONELL**,

Third Party Plaintiffs-Appellees,

v.

**CAROL ENGLISH,**

Third Party Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY
Henry Quintero, District Judge**

Gordon Davis Johnson & Shane P.C.

John M. Dickey

El Paso, TX

for Appellants Doctor's Associates, Inc. and Carol English

Scott Hulse P.C.

Casey S. Stevenson

El Paso, TX

for Appellees

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}     Appellants Doctor's Associates, Inc. (DAI) and Carol English appeal the district court's order denying their motion to compel arbitration. We affirm.

**BACKGROUND**

{2}     DAI and Jose Luis Carbonell and Victoria Carbonell were parties to a franchise agreement under which DAI, as franchisor, granted the Carbonells, as franchisees, the right to operate a Subway restaurant in Silver City, New Mexico. English was DAI's development agent. The parties' rights and responsibilities were largely governed by a franchise agreement, which contained an arbitration clause. As relevant to this appeal, the scope of the arbitration clause provided that "[a]ny dispute, controversy or claim arising out of or relating to this [a]greement or the breach thereof shall be settled by arbitration."

{3}     Following the procedures established in the franchise agreement, on April 11, 2012, DAI submitted a demand for arbitration to the American Dispute Resolution Center, Inc. Prior to a scheduled hearing before an arbitrator, the parties entered into a stipulated award, resolving the need for arbitration. The arbitrator approved the stipulated award.

{4}     In the stipulated award, the Carbonells admitted to violating the franchise agreement by failing to adhere to certain requirements of the franchisor's operations manual. They agreed to "transfer the restaurant in accordance with the standard transfer procedures established by [DAI] to a buyer approved by [DAI] within ninety (90) days[.]" The stipulated award additionally contained the following provisions:

> 6.     This Award is the Final Award. It is effective immediately, without the necessity of further hearing and can be confirmed in any court having jurisdiction.
>
> . . .
>
> 9.     The [p]arties agree and understand that this Stipulated Award contains the entire understanding of the parties.

{5}     The transfer did not take place within the specified period. On May 7, 2013, DAI filed an action in district court, alleging that the Carbonells had breached the stipulated award and requesting that the court confirm "the arbitration award as set forth in the [s]tipulated [a]ward." It subsequently filed an amended complaint. The Carbonells filed an answer, counterclaim, and third-party complaint. In their

counterclaim and third-party complaint, they claimed that DAI breached the franchise agreement and the stipulated award and, with English, a third-party defendant, had engaged in a civil conspiracy and fraudulent misconduct in connection with the Carbonells' transfer of the restaurant. English filed an answer to the third-party complaint.

{6} On November 27, 2013, DAI and English moved the district court to compel arbitration based on the arbitration clause of the franchise agreement. In response, the Carbonells argued that the matter was properly before the district court because their counterclaim did not arise from the franchise agreement, but from the stipulated award that did not contain an arbitration clause. Because their counterclaim and cross-claims referred to the franchise agreement in addition to the stipulated award, the Carbonells asserted that they would seek leave to amend the counterclaim and third-party complaint "to clarify that their claims arise only from" the stipulated award. The Carbonells reiterated this position at the beginning of their argument on the motion.

{7} After hearing argument on the motion, the district court issued an order denying the motion. It concluded that there was no agreement to arbitrate because the Carbonells' claims arose from the stipulated award, not from the franchise agreement or through arbitration, the stipulated award did not require arbitration, and the

stipulated award did not contain language incorporating the arbitration requirements of the franchise agreement.

**ABSENCE OF AGREEMENT TO ARBITRATE**

{8}     The issue on appeal, as it did in the district court, centers on whether the Carbonells' claims are based on the stipulated agreement or the franchise agreement. As explained by the district court, a court cannot compel arbitration in the absence of an enforceable agreement to arbitrate. *Alexander v. Calton & Assocs., Inc.*, 2005-NMCA-034, ¶ 9, 137 N.M. 293, 110 P.3d 509. We decide this issue as a matter of contract. *See Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 14, 288 P.3d 888 ("[The general] rule is that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (internal quotation marks and citation omitted)). In doing so, we seek to fulfill the intent of the parties and look to the plain meaning of the contractual language when possible. *Id.* ¶¶ 14, 20; *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 52, 131 N.M. 772, 42 P.3d 1221. We review de novo the district court's denial of the motion to compel arbitration. *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901.

{9}     There is no question that the parties had a valid, enforceable arbitration clause as contained in the franchise agreement. It was broad in scope and required the parties to settle by arbitration "[a]ny dispute, controversy or claim arising out of or relating to" the franchise agreement. However, although a broad arbitration clause requires a broad interpretation as to its scope, the claims at issue must bear a "'reasonable relationship' to the contract in which the arbitration clause is found." *Clay*, 2012-NMCA-102, ¶ 14; *Santa Fe Techs.*, 2002-NMCA-030, ¶¶ 52, 55.

{10}     The franchise agreement arbitration provision clearly applied to disputes arising from the franchise agreement and led the parties to pursue arbitration arising from their dispute concerning the operations of the Carbonells' restaurant. The question before us, however, is not as simple. When the parties proceeded to arbitrate the operations dispute, they entered into another agreement: the stipulated award.

{11}     Appellants argue that the stipulated award flows from the franchise agreement because the franchise agreement governed the entire relationship of the parties. According to Appellants, "[a]ll claims arise out [of] or relate to the . . . [f]ranchise [a]greement and simply could not have arisen in the absence of the parties' franchise relationship."

{12}     Although we agree with Appellants that the parties intended the franchise agreement to govern their relationship, we do not agree that the parties could not vary

6

their relationship such that all consequences of their actions would be controlled by the franchise agreement merely because it was the first agreement between them. *See Clay*, 2012-NMCA-102, ¶ 22 (citing with approval *Aiken v. World Fin. Corp. of S.C.*, 644 S.E.2d 705, 708 (S.C. 2007), that "applying what amounts to a but-for causation standard essentially includes every dispute imaginable between the parties, which greatly oversimplifies the parties' agreement to arbitrate claims between them" and stating that "[s]uch a result is illogical and unconscionable." (alteration, internal quotation marks, and citation omitted)).[1] The stipulated award, which, according to DAI, "could not have arisen in the absence of the parties' franchise relationship[,]" varied the parties' relationship. It added another express, written agreement between them. We thus must examine the stipulated award in addition to the franchise

---

[1]Appellants also rely on trial court cases in which DAI has been a party in support of its "but-for" position. The only reported case cited is *Doctor's Associates, Inc. v. Quinn*, 42 F.Supp.2d 184 (D.Conn.1999). In that case, a DAI development agent alleged that DAI had orally agreed to share losses incurred when the agent, at DAI's request, purchased and resold DAI franchises. *Id.* at 185-86. The development agent and DAI had previously entered into a development agent agreement that contained a similar arbitration clause to the franchise agreement at issue in this appeal. *Id.* at 185. The federal district court, in ordering that the development agent's damages claim was subject to arbitration, determined that the dispute "clearly [arose] out of [the] defendant's role as a development agent for [the] plaintiff[,]" and that the development agent's "role as development agent and his rights and obligations as defined in the [development agent a]greement will be an issue" in the lawsuit involving the oral agreement. *Id.* at 187-88. Because of its different facts, *Quinn* is not persuasive.

7

agreement in order to determine the intent of the parties regarding arbitration. *See CC Hous. Corp. v. Ryder Truck Rental, Inc.*, 1987-NMSC-117, ¶ 6, 106 N.M. 577, 746 P.2d 1109 ("When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties.").

{13}     The parties expressed in the stipulated award the provisions of the franchise agreement that would pertain to their agreement under the stipulated award. In this regard, the stipulated award incorporated provisions of the franchise agreement that were necessary to carry out the terms of the stipulated award and for the Carbonells to continue to operate the restaurant pending a transfer, such as those pertaining to the termination of the franchise agreement, insurance requirements, the applicability of the operations manual, and non-compete provisions. The transfer was to follow DAI's standard transfer procedures. The parties stated in the stipulated agreement: "The [p]arties agree and understand that this [s]tipulated [a]ward contains the entire understanding of the parties." The stipulated award does not contain a provision requiring arbitration.

{14}     Based on the parties' language, as expressed in both their franchise agreement and stipulated award, we conclude, as did the district court, that the parties did not

intend the arbitration clause of the franchise agreement to apply to claims that arose out of the stipulated award. *See Clay*, 2012-NMCA-102, ¶ 14 (requiring a reasonable relationship between the claims at issue and the contract containing the arbitration clause). The parties varied their relationship with the stipulated award. Most importantly, they included the merger clause in which they expressed the intent that the stipulated award was "the entire understanding." They designated the aspects of the franchise agreement that they believed were appropriate while the Carbonells operated the restaurant pursuant to the stipulated agreement. Thus, although the franchise agreement still provided the background for the parties' relationship, the parties focused on the stipulated award to complete their relationship.

{15}    Appellants argue that the arbitration clause of the franchise agreement remained in effect after the stipulated award because "[i]t would be unnecessary and duplicative to again include the arbitration provision" in the stipulated award. In this regard, Appellants point to the provisions of the stipulated award that required continued compliance with the franchise agreement for insurance and non-compete protections. They contend that such provisions "make clear that the Carbonells were expected to continue to comply with the terms of" the franchise agreement. However, we consider these provisions to be inconsistent with an intent that the provisions of the franchise agreement continued in effect without mention in the stipulated award. If the parties

made such an assumption, it would not have been necessary to specifically state that the insurance and non-compete provisions had continued effect. *See Bank of N.M. v. Sholer*, 1984-NMSC-118, ¶ 6, 102 N.M. 78, 691 P.2d 465 ("A contract must be construed as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract.").

{16}    Appellants further assert that the Carbonells' claims "specifically relate to the termination and attempted transfer" of the franchise agreement.[2] But, the Carbonells' claims pertain to the transfer of the Carbonells' Silver City restaurant and other restaurants, which was the express subject matter of the stipulated award. Appellants do not otherwise specifically tie the Carbonells' claims to the franchise agreement. We conclude that the parties did not intend for the arbitration clause of the franchise agreement to apply to the Carbonells' claims. *See Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 31, 314 P.3d 688 ("The purpose, meaning, and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." (alteration, internal quotation marks, and citation omitted)).

---

[2]Appellants also assert that the Carbonells allege in their counterclaim that they "have performed as required under the franchise agreement" as well as the stipulated award. As we have noted, however, the Carbonells have stated to the district court that they would amend their counterclaim and third-party complaint to make it clear that they only alleged a breach of the stipulated award.

10

{17}     Appellants additionally state that the language of the stipulated award "contains the entire understanding of the parties[,]" was a "boilerplate merger clause[,]" and contend that it was insufficient to supersede the arbitration clause of the franchise agreement. Appellants rely on *Riley Manufacturing Co. v. Anchor Glass Container Corp.*, 157 F.3d 775 (10th Cir. 1998), in this regard.

{18}     In *Riley*, the parties entered into a manufacturing agreement that included an arbitration clause. *Id.* at 776-77. After a copyright dispute arose, the parties entered into mutual releases and a settlement agreement. *Id.* at 777. In the settlement agreement, the parties agreed to reestablish a business relationship. *Id.* at 778. The settlement agreement contained a merger clause, stating that the settlement agreement constituted the entire agreement of the parties and "cancels, terminates and supersedes any and all prior representations and agreements relating to the subject matter thereof." *Id.* (internal quotation marks omitted). The Tenth Circuit addressed the merger clause in the context of a subsequent lawsuit, concluding that the merger clause canceled provisions that related to the subject matter of the settlement agreement, the specific copyright designs at issue in the original threatened lawsuit as well as the continuing use of the plaintiff's copyright designs, but that the arbitration clause of the manufacturing agreement would apply to other issues that were not the subject matter of the settlement agreement. *Id.* at 778, 783. The Tenth

Circuit also expressed the presumption that an arbitration provision is presumed to survive the expiration of the parties' contract unless there is "some express or implied evidence that the parties intend to override this presumption[.]" *Id.* at 781. It noted that there is no longer a presumption if the parties "express or clearly imply an intent to repudiate post-expiration arbitrability" or "the dispute cannot be said to arise under the previous contract." *Id.*

{19}     Appellants argue from *Riley* that the merger provision in this case is insufficient to repudiate the arbitration provision of the franchise agreement because it neither expressly nor clearly implies that arbitration does not apply. However, we do not believe that *Riley* affects our reasoning in this case for three reasons.

{20}     First, the holding in *Riley* relied on the specific language in the settlement agreement and the facts of that case. Second, even if we were to apply a presumption of survival absent evidence to the contrary, (1) we can reasonably imply from the language of the stipulated award that the parties did not intend for the arbitration provision of the franchise agreement to apply to a breach of the stipulated award, and (2) the present dispute did not arise from the franchise agreement. Third, although the parties' intent would have been more clearly stated if they had included language in the stipulated award similar to the cancellation language in *Riley*, in construing the intent of the parties, we cannot disregard the language that they did use. *See Montoya*

*v. Villa Linda Mall, Ltd.*, 1990-NMSC-053, ¶ 8, 110 N.M. 128, 793 P.2d 258 ("It is black letter law that, absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties.").

**STIPULATED AWARD AS ARBITRATION AWARD**

{21}    The district court found that the stipulated award "was entered into in lieu of arbitration. It was not reached through arbitration, or facilitated by an arbitrator." Appellants assert that the district court erred in these findings. They address these findings on appeal, although they question their relevance. We do not address Appellants' argument in this regard because it does not affect our determination of the appeal.

**CONCLUSION**

{22}    We affirm the order of the district court denying the motion to compel.

{23}    **IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**

13

_____
**RODERICK T. KENNEDY, Judge**