**STATE OF NEW YORK and George E. Pataki, as Governor of the State of New York, Plaintiffs–Appellants,**

v.

**ONEIDA INDIAN NATION OF NEW YORK, Defendant–Appellee.**

No. 1482, Docket 95–9166.

United States Court of Appeals, Second Circuit.

Argued May 13, 1996.

Decided July 23, 1996.

Denise A. Hartman, Assistant Attorney General (Dennis C. Vacco, Attorney General of the State of New York, Victoria A. Graffeo, Solicitor General, Peter H. Schiff, Deputy Solicitor General, State of New York, Albany, NY, of counsel), for Appellants.

Michael R. Smith, Washington, DC (William W. Taylor, III, Jonathan H. Levy, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, DC, of counsel), for Appellee.

Before: MESKILL, CARDAMONE and MINER, Circuit Judges.

MESKILL, Circuit Judge:

■ This case highlights the relationship between two guiding principles of the law of arbitration. The first principle requires the full enforcement of arbitration clauses and resolves ambiguities regarding the arbitrability of claims in favor of arbitrability. The second principle protects parties from being compelled to arbitrate claims they did not agree to arbitrate.

The United States District Court for the Northern District of New York, McAvoy, C.J., held that it lacked subject matter jurisdiction over the instant dispute on the ground that the plaintiffs' claim was subject to mandatory arbitration. Plaintiffs-appellants, the State of New York and its Governor, George E. Pataki (collectively the "State"), contend on appeal, as they did before the court below, that their claim is excluded from mandatory arbitration.

We hold that the State's claim in this case is not subject to mandatory arbitration because the parties specifically excluded it from the general arbitration clause. Although the defendant-appellee Oneida Indian Nation of New York (the "Nation") may have meritori-

ous defenses to the State's claim, these defenses must be presented to the district court, not an arbitrator. Therefore, we reverse the judgment of the district court and remand the case for further proceedings.

## BACKGROUND

The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721 (IGRA), was passed by Congress in 1988, among other reasons, "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). IGRA contemplates Tribal–State compacts negotiated between Indian tribes that operate gaming facilities on Indian lands and the states in which those lands are located.

The State of New York and the Oneida Indian Nation of New York executed such a compact (the "Compact") in April 1993, and it was approved by the Acting Assistant Secretary for Indian Affairs of the United States Department of the Interior on June 4, 1993 as required by 25 U.S.C. § 2710(d)(3)(B). *Nation–State Compact Between the Oneida Indian Nation of New York and the State of New York.* There is a list of "approved" games in appendix A to the Compact. *Nation–State Compact,* app. A. By the terms of the Compact:

> The Nation may request that additional games or activities, or new specifications for existing games or activities, be added to Appendix A by submitting written specifications to the State. The State shall within fifteen (15) days notify the Nation that it accepts or rejects the game or activity for Appendix A to the Compact. If the State accepts the game or activity, the game or activity and its specifications shall be added to Appendix A effective as

of the date of the State's acceptance of that game or activity.

*Nation–State Compact* § 15(b)(3).

The Nation made a written request to the New York State Racing and Wagering Board (the "Board") dated November 22, 1994, to amend appendix A to include "Instant Multi–Game" and its specifications. With mercurial speed, on November 23, 1994, the Board sent written approval of the requested amendment adding Instant Multi–Game to appendix A to the Nation. According to the complaint, the Nation began offering Instant Multi–Game at its Turning Stone Casino on March 10, 1995. On that day, the Secretary to the Governor of New York, Bradford J. Race, Jr., sent a letter to Nation Representative Ray Halbritter stating that Instant Multi–Game was not authorized under appendix A.

The Nation continued to operate Instant Multi–Game at Turning Stone Casino and the State subsequently brought this action. The State's complaint sought a declaration that the Nation was violating the Compact and an injunction prohibiting the Nation from operating Instant Multi–Game at Turning Stone Casino pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii).[1] The Nation raised a number of defenses, one of which was the Compact's mandatory arbitration clause. The district court ruled that the State's claim was covered by the mandatory arbitration clause and thus dismissed the claim for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1). We have appellate jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

■ We review *de novo* a district court's determination of the arbitrability of a claim. *Collins & Aikman Prods. Co. v. Building Sys., Inc.,* 58 F.3d 16, 19 (2d Cir.1995); *McMahan Sec. Co. v. Forum Capital Mkts. L.P.,* 35 F.3d 82, 86 (2d Cir.1994). Further-

---

1. Section 2710(d)(7)(A)(ii) states, in pertinent part, that "[t]he United States district courts shall have jurisdiction over ... any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal–State compact." 25 U.S.C. § 2710(d)(7)(A)(ii). The Supreme Court's recent decision in *Seminole Tribe of Fla. v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), which declared unconstitutional the preceding subsection, 25 U.S.C. § 2710(d)(7)(A)(i), does not affect this appeal.

more, "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987).

■ "The Federal Arbitration Act creates a 'body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir.1996) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). There is a strong federal policy favoring arbitration as an alternative means of dispute resolution. *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 248 (2d Cir.), *cert. dismissed*, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991). In accordance with that policy, we resolve doubts as to the arbitrability of a claim in favor of arbitrability. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25, 103 S.Ct. at 941. Indeed, "[w]e will compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Collins & Aikman*, 58 F.3d at 19 (quoting *Threlkeld*, 923 F.2d at 250 (omitting internal quotation and citation)).

■ The parties, however, may limit by agreement the claims they wish to submit to arbitration. If the parties make such an intention clear, the federal policy favoring arbitration must yield. We have stated that it is "clear that 'federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope.'" *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 831 (2d Cir.1988) (quoting *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir.1977)).

■ The Compact contains a provision providing for arbitration which states in pertinent part:

Except for disputes concerning the games and activities permitted under this Compact, all disputes concerning compliance with and interpretation of any provisions of the Compact shall be resolved by binding arbitration in accordance with the procedures set forth below. A claim by the State that the Nation is conducting a Class III gaming activity not authorized by this Compact is not subject to mandatory arbitration.

*Nation–State Compact* § 14(a).

Before the district court, the State argued that its claim was excluded from mandatory arbitration by the exclusionary clause covering "claim[s] by the State that the Nation is conducting a Class III gaming activity not authorized by this Compact."[2] *Id.* The Nation disagreed, and argued that the State's claim did not fall within the exclusionary clause. The Nation argued that Instant Multi–Game was indeed authorized pursuant to the plain language of the Compact. It claimed that the Racing and Wagering Board revised the appendix to include the game.

The district court stated that the State's claim fell outside the exclusionary clause on its face. Thus, according to the district court, even without looking to the factual allegations behind the State's claim, the exclusion did not apply. The State's complaint alleged, in pertinent part:

35. Defendant Oneida Nation's written request for an amendment to Appendix A of the Compact to add [Instant Multi–Game] failed to comply with the terms of Section 15 of the Compact.

36. Under the provisions of the Compact, all amendments and modifications must be approved by the State of New York and the State, acting through the Governor or his authorized representative, must issue such approvals.

. . . .

40. The proposed amendment to add [Instant Multi–Game] has not been approved by the State pursuant to the terms of the Compact.

41. By commencing [Instant Multi–Game] at its Turning Stone Casino on and after March 10, 1995, the Oneida Nation has

**2.** The parties apparently agree that Instant Multi–Game is a Class III gaming activity.

acted in violation of the terms of the Compact because [Instant Multi–Game] has not been approved by the State of New York.

It is clear from the complaint and from the arguments of counsel that the State's theory is that the Board did not have the authority to amend appendix A, and thus the appendix was not amended to include Instant Multi–Game. Thus, the State claims, Instant Multi–Game is not authorized by the Compact.

The district court believed that passing on such a theory inevitably would necessitate an analysis of the Compact's provisions, namely, the provisions defining which person or agency had the authority to act for the State. Thus, quoting from the arbitration clause, the district court ruled that the arbitration clause applied because the claim concerned "compliance with and interpretation of any provisions of the Compact." *Nation–State Compact* § 14(a). The district court then stated that because, in its view, the exclusionary clause was "inapplicable" (because the face of the State's complaint did not claim that Instant Multi–Game was not authorized by the Compact), the claim was arbitrable.

The district court's analysis was incomplete. The court failed to recognize the applicability of the exclusionary clause. While it is true that exclusionary clauses should not be given expansive readings, here the language excluding a certain class of disputes from arbitration was clear and unambiguous. As such, the court was obliged to give effect to the exclusionary clause. *See Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union,* 788 F.2d 894, 898 (2d Cir.1986) (holding that "crystal clear and unambiguous" exclusionary clause must be given effect). The district court should have assessed the arbitrability of the claim under the entire arbitration section, including the exclusionary clause. *See Mastrobuono v. Shearson Lehman Hutton,* —— U.S. ——, ——, 115 S.Ct. 1212, 1217, 131 L.Ed.2d 76 (1995) (noting that the meaning of two consecutive sentences in an arbitration clause taken together is "the more important inquiry" (citing Restatement (Second) of Contracts § 202(2) (1979))); *Doctor's Assocs.*

*v. Distajo,* 66 F.3d 438, 452 (2d Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996). Only then could the district court divine the intent of the parties as reflected by the general arbitration clause *and* the exception.

■ Courts must treat agreements to arbitrate like any other contract. *Volt Info. Sciences v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967). Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well. As the Supreme Court has instructed,

> we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so, ... *nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement ....* It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

*Volt Info.,* 489 U.S. at 478, 109 S.Ct. at 1255 (emphasis added) (citations omitted). In this case, the parties attempted to exclude a type of claim from mandatory arbitration: claims that the Nation is operating a game not authorized under the Compact. If the State's claim falls into that category, then the State may not be compelled to arbitrate. *Id.; Collins & Aikman,* 58 F.3d at 19.

As we see it, the arbitration clause, read as a whole, evinces the parties' intent to exclude the type of claim at issue here from mandatory arbitration. The exclusionary clause applies to "claim[s] by the State that the Nation is conducting [a game] not authorized by th[e] Compact." *Nation–State Compact* § 14(a). In its complaint, the State alleged that the request for an amendment adding Instant Multi–Game "failed to comply with the terms of ... the Compact." The State also alleged that the amendment "has not been approved by the State pursuant to the

terms of the Compact." Although these allegations may not fit word for word under the exclusionary clause, we will not don blinders to their obvious meaning and thereby thwart the reasonable expectations of the parties to the Compact. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 28 (2d Cir.1995) (stating that the "main concern in deciding the scope of arbitration agreements is to 'faithfully reflect[ ] the reasonable expectations' " of the parties (quoting *Haviland v. Goldman, Sachs & Co.,* 947 F.2d 601, 605 (2d Cir.1991), *cert. denied,* 504 U.S. 930, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992) (alteration in *Leadertex* ))). No other reading of the arbitration clause is tenable. The natural import of these allegations is that the Compact was never amended to authorize Instant Multi–Game, the type of claim excluded from arbitration.

■ Nevertheless, the Nation argues that even taking the exclusionary clause and underlying allegations into consideration, this Court cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies v. Communications Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). We disagree and note that our construction complies with the cardinal principle of contract construction that all provisions of a contract should be given effect if possible. *Mastrobuono,* —— U.S. at ——, 115 S.Ct. at 1219.

Our construction gives meaning to the exclusionary clause. Conversely, the Nation's construction renders the exclusionary clause nearly meaningless and gives effect only to the portion of the clause that provides for arbitration. The Nation's construction does not even give meaning to the entirety of the sentence on which it relies. That sentence begins "Except for disputes concerning the games and activities permitted under this Compact." *Nation–State Compact* § 14(a). The Nation, by construing the exclusionary clause so narrowly, robs even this introductory language of meaning. Our construction, which gives meaning to the exclusionary clause, is completely consistent with the introductory language.

The Nation argues that the parties did not intend the exclusionary clause to encompass an attack on the "authorized" status of a game based on an interpretation of the Compact. The Nation contends that the exclusionary clause was meant for claims by the State that the Nation is disregarding the amendment process by operating a game never added to appendix A, either because the game was never submitted to the State for approval or because the State rejected it. The language of the arbitration clause contains no such limitation.

■ As noted above, a game may not be "authorized" by the Compact for a number of reasons, ranging from a total disregard for the amendment process to a failure to follow its requirements. The parties chose the phrase "not authorized by this Compact," *id.,* and we give those contractual words their ordinary and full meaning. While the federal policy favoring arbitration requires that we resolve doubts in favor of arbitrability, it does not demand that we "extend the reach of arbitration beyond the intended scope of the clause providing for it." *Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 85 F.3d 21, 28 (2d Cir.1996); *see also McDonnell Douglas,* 858 F.2d at 831 (stating that it is "clear that 'federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope' " (quoting *Fuller,* 565 F.2d at 261)). This wariness of stretching otherwise clear language is especially crucial where the proposed construction would render part of the agreement—the exclusionary clause—nearly inoperable. *See Mastrobuono,* —— U.S. at ——, 115 S.Ct. at 1219 (stating that "a document should be read to give effect to all its provisions").

The Nation warns that courts should not be induced into addressing the merits of a claim in the name of determining arbitrability. *See Warrior & Gulf,* 363 U.S. at 585, 80 S.Ct. at 1354 (holding that courts should avoid deciding the merits in determining arbitrability). That is precisely what we will not do. We reject the Nation's invitation to

speculate on the merits of its contention that the Board was the proper State representative to amend the Compact. Instead, we recognize that the State has claimed that the Board was not the proper State representative, and that such a claim falls logically under the exclusionary clause. The parties expressed their intent to exclude claims such as this from mandatory arbitration, thus it is for the district court to determine the merits of the State's claim.

In holding that the district court must entertain the State's claim in this case, we are not relying on any "label" assigned by the State to its claim. The Nation argues that the State's claim that Instant Multi-Game is not "authorized" is such a label. However, the Nation misreads our warnings against blind reliance on pleadings crafted to avoid arbitration clauses as our approval of addressing the merits of the State's claim. The Nation believes that the Board so clearly had authority to amend the Compact that we should ignore the State's claim that the Board lacked that authority. To do that would be to address the merits of the State's claim. That we will not do. We are satisfied that the State's claim falls properly under the exclusionary clause.

We also reject the Nation's argument that the State's claim is precluded by the physical presence of Instant Multi-Game in appendix A. We do not believe that the parties intended the phrase "authorized by this Compact" to turn on the presence of words added to the Compact without regard to how they got there. To accept such an argument would be to elevate formalism to a new plane.[3] The Board's possession of the State's copy of the Compact may be evidence that the State believed that the Board was its proper representative. However, it is not sufficient to prevent the State from making a good faith argument to the contrary. That issue is for the district court to resolve when it decides the merits.

In sum, the State's claim falls under the exclusionary clause. It is not the role of this Court to stretch otherwise clear language to defeat the expressed intent of the parties. In light of our resolution of the arbitrability issue, we need not reach the State's other arguments.

## CONCLUSION

For the reasons stated above, the judgment of the district court is reversed and the case is remanded for further proceedings.

---

**3.** Notably, the Compact itself does not make the amendment of the Compact dependent on its physical amendment. Rather, Compact section 15(b)(3) states that the appendix is deemed to be amended as of the date of the State's acceptance. *Nation–State Compact* § 15(b)(3).