**HIGMAN MARINE SERVICES, INC., Higman Barge Lines, Inc. and Maryland Marine, Inc., Plaintiffs,**

v.

**BP AMOCO CHEMICAL COMPANY, Defendant.**

**No. Civ.A. G–00–342.**

United States District Court, S.D. Texas, Galveston Division.

Sept. 29, 2000.

Ronald L. White, White Mackillop, Houston, TX, for Higman Marine Services Incorporated, plaintiff.

Thomas R. Nork, Bell Ryniker, Houston, TX, for BP Amoco Chemical Company, defendant.

*ORDER DENYING DEFENDANT'S MOTION FOR STAY OF JUDICIAL PROCEEDINGS*

KENT, District Judge.

## I. FACTUAL SUMMARY

Some twenty-two months ago, on January 1, 1998, Plaintiffs Higman Marine Services, Inc., Higman Barge Lines, Inc., and Maryland Marine, Inc. (hereinafter "Higman" or "Plaintiffs") and Defendant BP Amoco Chemical Company ("BP Amoco") entered into a maritime Contract of Affreightment ("COA") whereby Plaintiffs' vessels would carry Defendant's cargoes. In August 1998, pursuant to the COA, Defendant issued an order for Plaintiffs to carry 20,000 barrels of paraxylene from Decatur, Alabama to Texas City, Texas. Plaintiffs apparently did so carry this cargo. However, nearly a year later, on July 28, 1999, Defendant issued a notice letter to Plaintiffs, claiming that the paraxylene had been contaminated by sulfur while in Plaintiffs' care, and alleging $602,678.34 in damages. Plaintiffs denied liability and, after the passing of nearly another year, filed a Declaratory Judgment Action with this Court on June 13, 2000 seeking a declaration that they are not liable to Defendant for the allegedly damaged paraxylene. Defendant subsequently made, on June 23, 2000, a demand for arbitration in Chicago, Illinois. Shortly thereafter, while continuing to demand arbitration, Defendant answered in this Court and asserted Counterclaims against Plaintiffs, as well as a Third–Party Complaint against the vessel, for the allegedly contaminated paraxylene. Now before the Court are Plaintiffs' Motion to Stay Arbitration, and corresponding Application for Injunction, along with Defendant's Cross–Motion for Stay of Judicial Proceedings. For the reasons set forth below, Plaintiffs' Motion to Stay Arbitration and Application for Injunction are not reached, while Defendant's Motion for Stay of Judicial Proceedings is **DENIED.**

## II. ANALYSIS

At the outset, the Court observes that there is a strong federal policy favoring the arbitration process. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (noting that the Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements); *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *Life of America Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 412–13 (5th Cir.1984). The Court, moreover, dutifully follows the four guiding principals established by the United States Supreme Court regarding arbitrability. First, and of crucial relevance to the matter now before the Court, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Second, unless the parties "clearly and unmistakably provide otherwise, the question of [arbitrability] ... is to be decided by the court...." *Id.* at 649, 106 S.Ct. at 1418. Third, in deciding arbitrability, "a court is not to rule on the potential merits of the underlying claims." *Id.* at 649, 106 S.Ct. at 1419. Fourth, "where the contract contains an arbitration clause, there is a presumption of arbitrability ... 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 650, 106 S.Ct. at 1419 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960)). Importantly, however, an express provision excluding a particular grievance from arbitration may overcome this presumption. *See id.*, 106 S.Ct. at 1419. The preliminary question now at issue before the Court is that of arbitrability. The answer to this question will guide the

Court in ruling on the parties respective requests for stays.

█ . When confronted with the question of arbitrability, a District Court must determine, as a threshold matter, whether the grievance before it is subject to arbitration. See *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir.1995); *Oil, Chem. & Atomic Workers Int'l Union Local 4-227 v. Phillips 66 Co.*, 976 F.2d 277, 278 (5th Cir.1992). This determination mandates two specific inquiries. First, the Court asks whether there is a valid agreement to arbitrate; if so, the Court then asks whether the dispute in question falls within the scope of the agreement. See *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir.1996). Ordinary state contract law will generally guide the Court in ruling on arbitrability. See *id.* at 258. However, while the Court applies state contract law, it will nevertheless give " 'due regard ... to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.' " *Id.* (quoting *Volt Info. Sciences*, 489 U.S. at 475-76, 109 S.Ct. at 1253-54).

In support of their Motion to Stay Arbitration, Plaintiffs argue that: (1) the contract does not allow arbitration of any claims; and in the alternative (2) this declaratory judgment action falls within an exception to the arbitration clause. In response, Defendant quite simply disagrees with these two contentions and argues that this dispute is subject to the arbitration clause and does not trigger this exception.

### A. *Existence of a Valid Agreement*

█ There are two parts to the Contract of Affreightment. Both parts contain a provision concerning the resolution of disputes. Part I provides that "[l]itigation if any, shall be initiated in the United States District Court for the Southern District of Texas." COA at Part I, para. 18. Part II sets forth, in relevant part, that:

Subject to the following provision for litigation of extraordinary claims, any and all unsettled claims, differences and disputes of whatsoever nature arising out of or relating to the CONTRACT (hereinafter "claims") shall be resolved through binding arbitration.... In lieu of binding arbitration, a party hereto ("claimant") having an extraordinary claim (one totaling in excess of U.S. $250,000 ...) not previously submitted by that claimant for resolution through binding arbitration, may elect to have the extraordinary claim resolved through litigation commenced in any United States District Court having such jurisdiction in the premises.

COA at Part II, para. 35.

Plaintiff attempts initially to argue that the arbitration clause at issue in this dispute has no effect. The COA provides that in the event of "inconsistencies" or a "conflict" between its two parts, Part I shall prevail over Part II. COA at Part I, para. 20 and Part II, para. 34. Part I of the COA, as quoted above, sets out a forum selection clause. COA at Part I, para. 18. Part II contains the above arbitration clause. According to Plaintiffs, the presence of an arbitration clause in Part II conflicts with or is inconsistent with the forum selection clause contained in Part I, and thus the forum selection clause must trump the arbitration clause. This argument completely lacks merit.

There is no conflict or inconsistency between Parts I and II of the COA. For starters, Part I provides for "[l]itigation *if any*." COA at Part I, para. 18 (emphasis added). It never suggests that all disputes must be settled by litigation only. To accept this argument would require the Court to hold that the parties could not choose to settle a dispute by amicable discussion or through resort to any sort of negotiation. Rather, this clause would become deified as the sole method of settling differences. The "if any" language suggests at least a hearty optimism that the parties will not be required to resort to litigation. Moreover, litigation and arbitration are not mutually exclusive exercises. A case that proceeds to arbitration may nevertheless require that a court en-

ter a judgment pursuant to the arbitral award. *See, e.g., Place St. Charles v. J.A. Jones Constr. Co.*, 823 F.2d 120, 124 (5th Cir.1987). Also, as is evident in this very matter, it is the province of the Courts to initially determine arbitrability. *See AT & T Techs.*, 475 U.S. at 649, 106 S.Ct. at 1418. Additionally, following an arbitration, a party may initiate litigation to request that a court vacate an arbitration award. *See, e.g., Duke v. Crop Growers Ins., Inc.*, 70 F.Supp.2d 711, 714 (S.D.Tex. 1999). Finally, the actual arbitration clause in the COA also eviscerates Plaintiffs' argument. The clause specifically provides that certain disputes shall not be subject to binding arbitration and may instead be resolved through litigation. *See* COA at Part II. para. 35. Thus, the clauses at issue neither conflict nor are inconsistent, but are instead perfectly harmonious. The clause in Part I simply provides a forum for "litigation if any" that may come to bear before, during, after, or in lieu of arbitration. Having found that Plaintiffs' first contention lacks merit, and as the parties have raised no other arguments regarding the validity of the arbitration clause, the Court now turns to whether or not the underlying dispute falls within the COA's clear exception to mandatory arbitration.

### B. *Exception to Arbitration*

■ The COA contains a broad arbitration clause covering "any and all unsettled claims, differences and disputes of whatsoever nature...." *See* COA at Part II, para. 35. However, the COA also exempts from arbitration, at the option of a party, certain "extraordinary claims." *See id.* In making this determination of arbitrability the Court is mindful that it not interpret the exclusionary clause too broadly. *See State of New York v. Oneida*

*Indian Nation of New York*, 90 F.3d 58, 62 (2d Cir.1996). However it is a "cardinal principle" of contract construction that all provisions of a contract be given effect whenever possible. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995). And while the Court is cognizant of the national policy favoring arbitration, if the dispute at issue falls within a clear exclusion from arbitration this Court is bound to enforce that exclusion. *See Oneida Indian Nation*, 90 F.3d at 62. The Federal Arbitration Act ("FAA") "does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *Volt Info. Sciences*, 489 U.S. at 478, 109 S.Ct. at 1255 (citations omitted). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Id.* The Court must therefore determine if Plaintiffs' Declaratory Judgment Action constitutes an "extraordinary claim" that falls within the exception to arbitration and thus outside the scope of the arbitration clause.

■ The Court now begins its ambling journey through the COA's arbitration clause. Had the drafters of this document undertaken to become minimally competent in common sense English, this would be an easy undertaking. Instead the Court must parse through word after asinine word intended to convey the simple idea that "big" disputes may go to court while "little" disputes must go to arbitration. In the future, the Court highly recommends that the parties not employ the likes of E.E. Cummings to draft legal documents. Because while the Court enjoys the famous poet's clever word play,[1] the

---

1. r-p-o-p-h-e-s-s-a-g-r
        who
    a)s w(e loo)k
    upnowgath
        PPEGORHRASS
        eringint(o-
    aThe):1

    eA
    !p:
    S    a
    (r
    rIvInG gRrEaPsPhOs)
        to
    rea(be)rran(com)gi(e)ngly

parties have spent thirty-one presumably rather expensive pages attempting to inform the Court how many angels can dance on the head of this pin. Nevertheless, a quick semantic analysis should put these arguments to rest.

Initially, the Court notes that despite Defendant's best attempts to portray this arbitration clause as riddled with ambiguities, all the crucial disputed terms are in fact defined within the clause itself. The clause broadly defines the word "claims" as it is to be used "hereinafter" as "all unsettled claims, differences and disputes[2] of whatsoever nature arising out of the CONTRACT. . . ." COA at Part II, para. 35. And despite Defendant's contentions, a declaratory judgment action certainly falls within this expansive definition. If a declaratory judgement action is not a "claim, difference or dispute" one must ask what business the federal courts have had adjudicating these matters for so many years.[3] See Ashcroft v. Mattis, 431 U.S. 171, 172, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977) (per curiam) (noting that the purpose of a declaratory judgments is to settle actual disputes). However, in order for Plaintiffs to invoke the exception to the arbitration clause, the dispute must also be "extraordinary." The contract defines a dispute as "extraordinary" if it is "one totaling in excess of U.S. $250,000. . . ." See COA at Part II, para. 35. Defendant alleges that Plaintiffs are liable for $602,-678.34. Plaintiffs' Declaratory Judgment Action, if successful, would exonerate them of this liability. As such, Plaintiffs' do have a "claim difference [or] dispute" for an amount "in excess of U.S. $250,000." Cf. Webb v. Investacorp, Inc., 89 F.3d 252, 256 (5th Cir.1996) (holding that for the purposes of diversity jurisdiction the amount in controversy equals the amount that could be awarded in arbitration); Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir.1983) (noting that the value of the right to be protected or the extent of the injury to be prevented establishes the amount in controversy for an action seeking declaratory or injunctive relief). Defendant, in its response, also makes much of the fact that Plaintiffs are not a "claimant." In essence, Defendant argues that the Higman entities are substantively defending against a claim asserted by BP Amoco and that BP Amoco is the only claimant in this case. If the contract provided no guidance on this issue, the Court might be inclined to accept this argument. However, the contract has again defined the disputed term: A "claimant" is defined as a "party hereto," meaning a party to the contract. See Black's Law Dictionary 732 (7th ed.1999) (defining "party hereto" as a party to the contract). The contract attaches no importance whatsoever to the parties substantive or procedural posture. This is the same type of argument Defendant made regarding the meaning of "claim," and because the contract has provided a definition in both cases, Defendant's argument is misguided.

Because of the rather disjunctive nature of this type of word by word contract analysis, a quick exercise in interpolation illustrates the propriety of the Court's conclusion. The parties entire fight comes down to the meaning of the phrase: "[A] party hereto ('claimant') having an extraordinary claim (one totaling in excess of U.S. $250,000 . . .) not previously submitted by that claimant for resolution through binding arbitration, may elect to have the extraordinary claim resolved through litigation." Interpolating the definitions of the various words attains the following result:

,grasshopper;

E.E. Cummings, Complete Poems: 1904–1962 (George J. Firmage ed., 1979)

**2.** Dispute is defined as "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit." Black's Law Dictionary 485 (7th ed.1999).

**3.** Because Defendant makes much of its argument that Plaintiff has no affirmative claim, the Court will substitute the more encompassing word "dispute" for the allegedly narrower word "claim" throughout its discussion. The COA's definition of "claim" expressly countenances this substitution. COA at Part II, para. 35.

The Higman Plaintiffs (as a "party hereto") having[4] unsettled claims, differences and/or disputes of whatsoever nature, totaling in excess of $250,000, not previously submitted by Higman for resolution through binding arbitration, may elect to have the unsettled claims, differences and/or disputes of whatsoever nature, totaling in excess of $250,000 resolved through litigation.

Plaintiffs' Declaratory Judgment Action embodies the unsettled difference or dispute they have with Defendant. This dispute has a value in excess of $250,000, and Plaintiffs have not previously submitted it to arbitration. As such the arbitration clause clearly and unambiguously provides that Plaintiffs may opt for litigation, and they have done just that.

### C. Stay of Judicial Proceedings

■ The Federal Arbitration Act, 9 U.S.C. § 3, "mandates that when an issue is referable to arbitration pursuant to a written agreement, the district court must 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.'" *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 659 (5th Cir.1995). The existence of an arbitrable dispute is a prerequisite to the mandatory stay sought by Defendant. The COA clearly provides that this dispute involving in excess of $250,000 falls within the exception to arbitration opted for by Plaintiffs. Accordingly, Defendant's Motion for Stay of Judicial Proceedings is **DENIED.**

### D. Stay of Arbitration

From the Supreme Court down to this Court on Galveston Island, the federal courts espouse a strong federal policy in favor of arbitration. *See Duke v. Crop*

*Growers Ins., Inc.*, 70 F.Supp.2d 711, 716 (S.D.Tex.1999). However, if the arbitration clause does not cover the dispute, then it does not cover the dispute. To the extent that the arbitration clause is ambiguous, "arbitration must be given the benefit of the doubt." *Local Union No. 4–449, Oil, Chem. & Atomic Workers Union v. Amoco Chem. Corp.*, 589 F.2d 162, 163 (5th Cir.1979) (per curiam) (affirming on the basis of the District Court's opinion). However, when the arbitration clause "obviously excludes" certain types of claims these exclusions must be given effect. *Id.* at 164; *accord Mar–Len of Louisiana, Inc. v. Parsons–Gilbane*, 773 F.2d 633, 636 (5th Cir.1985) (stating that express exclusions of particular claims from arbitration should be enforced); *Oneida Indian Nation*, 90 F.3d at 61 (holding that the federal policy favoring arbitration must yield to the clear exclusions of the parties). The Court has above determined that this Declaratory Judgment Action falls within a clear exception to the arbitration clause. Therefore, the Court must not compel arbitration. *See Local Union No. 4–449*, 589 F.2d at 163–164. However, it does not automatically follow that the Court must then issue a stay of arbitration proceedings. Defendant has pointed out that "[b]oth parties are before this Court for all purposes and subject to its jurisdiction, [and] are therefore bound by any order entered by this Court with respect to arbitration...." Response of BP Amoco at 4. As the Court understands this admission, Defendant has every intention of respecting the Court's ruling on arbitrability, and the Court trusts that Defendant will not continue to demand arbitration in light of the Court's determination that this dispute is clearly not arbitrable. Therefore, the Court sees no need to rule immediately on Plaintiff's Motion to Stay Arbitration or

---

**4.** Defendant attempts to introduce ambiguity into the phrase "having a claim" where none exists. While Defendant may be correct that Plaintiffs do not "have" a "claim" in an everyday sense, they certainly do have a "difference" or "dispute," and these terms are included within the contract's definition of "claim." Defendant, as mentioned, further attempts to introduce ambiguity by attempting to interject dictionary definitions of "claimant" when that word has no legally operative meaning in this arbitration clause other than to serve as shorthand for "a party hereto." The Court rejects these arguments.

**600**

Application for Injunction. The Court does note that in "appropriate circumstances" the Court may issue a stay of arbitration. *Tai Ping Ins. Co., Ltd. v. M/V Warschau,* 731 F.2d 1141, 1144 (5th Cir.1984). Undeniably, staying a dispute that is not properly subject to arbitration must be one such circumstance. *See id.* at 1146 (suggesting that a stay may issue if the dispute is not arbitrable); *accord Texaco, Inc. v. American Trading Transp. Co., Inc.,* 644 F.2d 1152, 1154 (5th Cir. Unit A May 1981) (affirming the District Court's decision to stay the arbitration of a dispute that was not covered by the parties' arbitration agreement). However, the Court declines to reach either Plaintiffs' Motion to Stay Arbitration or Application for Injunction at this time.

### III. CONCLUSION

For the reasons set forth above, the Court has determined that the dispute now before it falls within the clear and unambiguous exception to an otherwise broad arbitration clause. Accordingly, Defendant's Motion for Stay of Judicial Proceedings is **DENIED.** The Court also reminds the parties that its Order Denying a Stay of Judicial Proceedings in this maritime action is not appealable. *See Texaco, Inc.,* 644 F.2d at 1154; *W.R. Grace & Co. v. Trawler Crustamar,* 571 F.2d 318, 319 (5th Cir.1978). Defendant has indicated it will follow the Court's ruling on arbitrability. As noted above, the Court therefore feels supremely confident that both parties will dispense with efforts to arbitrate and proceed with the litigation of this matter. Thus, the Court declines to rule at present on the merits of Plaintiff's Motion to Stay Arbitration and corresponding Application for Injunction. Should the Court, however, have misunderstood Defendant's representations, Plaintiffs may reurge their motions at such point in time as is necessary. **IT IS SO ORDERED.**