*China Shipping Container Lines v. Big Port Service*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of March, two thousand twenty.

Present:
> DEBRA ANN LIVINGSTON,
> RICHARD J. SULLIVAN,
> WILLIAN J. NARDINI,
> *Circuit Judges*.

_____

CHINA SHIPPING CONTAINER LINES CO. LTD.,

> *Petitioner-Appellee*,

v.                                                            19-1111

BIG PORT SERVICE DMCC,

> *Respondent-Appellant*.

_____

| | |
|---|---|
| For Petitioner-Appellee: | GINA M. VENEZIA (Michael J. Dehart, *on the brief*), Freehill Hogan & Mahar LLP, New York, NY |
| For Respondent-Appellant: | PETER SKOUFALOS, Brown Gavalas & Fromm LLP, New York, NY |

Appeal from a judgment of the United States District Court for the Southern District of

New York (Torres, *J*.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Big Port Service DMCC ("BPS") appeals from a March 29, 2019 judgment enjoining arbitration between BPS and China Shipping Container Lines Co. Ltd. ("CSCL") regarding the supply of marine fuel oil to a CSCL vessel. The district court recognized a decision of a Singaporean court regarding the dispute between the parties (the "Singapore Judgment"), accorded that decision preclusive effect, and concluded that CSCL could not be forced to arbitrate because there was no binding arbitration agreement between CSCL and BPS. BPS appeals, challenging various aspects of the district court's ruling. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.    Subject Matter Jurisdiction

The district court concluded that it had subject matter jurisdiction over this dispute pursuant to our decision in *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59 (2d Cir. 2012). "We review the question of subject-matter jurisdiction *de novo*." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 126 (2d Cir. 2011). BPS contends that the district court erred in applying *Garanti* because that case addressed the proper approach to subject matter jurisdiction in declaratory judgment actions involving issues of federal law, not, as here, the issues of contract law pertinent to arbitration. We disagree.

BPS's jurisdictional argument is, in fact, foreclosed by *Garanti*. Indeed, the precise argument BPS now advances was put forth by AM, the defendant in *Garanti*, and we rejected it. *See Garanti*, 697 F.3d at 62. Here, as in *Garanti*, the parties must be rearranged into a hypothetical coercive action that is the "mirror image" of the suit actually brought by CSCL. *Id.* at 66. That "mirror image" suit—BPS suing CSCL to compel arbitration on a maritime

2

contract—is one over which the federal courts would have jurisdiction. *See id.* at 71 ("Although GFK, the plaintiff in this case, disclaims the existence of a maritime contract, there is no question but that we would have jurisdiction over AM's hypothetical coercive suit to enforce the contract. Thus, we have jurisdiction over this declaratory judgment action as well."). Accordingly, jurisdiction is proper in the instant declaratory judgment action.

## II.    Recognition of the Singapore Judgment

BPS next argues that the district court erred in recognizing the Singapore Judgment. BPS points to two purported shortcomings in the foreign proceedings that supposedly undermine the propriety of according the foreign judgment comity: the absence of a full and final judgment and the strong federal policy favoring arbitration. We need not decide whether the proper standard of review for the district court's recognition decision is abuse of discretion, *see Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Emploración y Producción*, 832 F.3d 92, 100 (2d Cir. 2016), or *de novo*, *see Diorinou v. Mezitis*, 237 F.3d 133, 139–40 (2d Cir. 2001), because BPS's arguments fail even under *de novo* review.

As to BPS's first argument, the Singapore Judgment resolved the relevant issue here: the existence of an arbitration agreement between CSCL and BPS. BPS conceded before the Singaporean courts that this question had to be decided in that proceeding, and BPS actively litigated the issue. Moreover, the Singapore action was not merely an *in rem* proceeding related to the arrest of CSCL's vessel. Rather, BPS sought damages arising out of its supposed contract with CSCL. Accordingly, the Singapore Judgment was not limited, as BPS now contends, but was a full decision addressing the existence of the arbitration agreement at issue.

Turning to BPS's second argument, there is a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). But that policy

3

does not elevate arbitration agreements above other contracts; it solely requires enforcement, "according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989); *see also New York v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996) ("[F]ederal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope." (citation omitted)). As BPS concedes, American courts vindicate the policy favoring arbitration through judicial proceedings that assess whether an agreement to arbitrate exists. And that is precisely the process BPS received in Singapore. The policy favoring arbitration does not require that BPS get a second hearing on this issue in the United States. BPS's argument to the contrary is without merit.

### III.    Preclusion and Estoppel

BPS next argues that, even if the district court properly recognized the Singapore Judgment, it erred in according it preclusive effect. Specifically, BPS contends that the Singapore court neither considered relevant U.S. law nor ruled on arbitrability, and that the question of arbitrability was not necessary to support the Singapore Judgment. "[W]e . . . generally review de novo a district court's ruling on [issue] preclusion." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005); *see also Diorinou*, 237 F.3d at 140. Collateral estoppel or issue preclusion "applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011). Applying those factors here, we agree with the district

4

court's conclusion that the Singapore Judgment precludes BPS from relitigating the existence of an arbitration agreement between it and CSCL.

First, a foreign court need not consider or apply domestic law so long as there is ultimately an identity of issues. In other words, "the legal standards to be applied must . . . be identical," but the foreign court need not apply a specific body of law. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 48–49 (2d Cir. 2014) (citation omitted); *see also Greene v. United States*, 79 F.3d 1348, 1353 (2d Cir. 1996). Here, the legal standards applied were substantively the same and the agency principles applied by the Singapore court are in accord with New York agency law. Accordingly, there is an identity of issues.

Next, the question of arbitrability was actually litigated in Singapore and was necessary to the Singapore Judgment. As explained above, BPS sought money damages from CSCL and was not simply seeking a provisional remedy when it commenced litigation in Singapore. The Singapore court dismissed BPS's suit on the ground that it did not enter into an agreement with CSCL. Thus, the issue was actually litigated and decided in Singapore. And because the foreign action was dismissed based on the absence of a contract between CSCL and BPS, that decision was necessary to the judgment.

BPS also suggests that it was not able to fully and fairly litigate in Singapore because it never obtained discovery. Not so. All the emails BPS now seeks to present to the district court were already in its possession at the time of the Singapore action as they were either to or from BPS employees. BPS was "require[d] . . . to bring forward all evidence in support of [its claim] in the initial proceeding." Restatement (Second) of Judgments § 27 illus. 4. BPS filed briefs, argued its case, and appealed the Singapore decision. Under these circumstances, BPS had a full and fair opportunity to litigate.

5

Finally, BPS represented in the district court, while seeking a stay of the district court proceedings in favor of the Singapore litigation, that the decision of the Singapore courts would be determinative on the issue of whether CSCL could be required to arbitrate. CSCL argues that, as a result, BPS is estopped from contending that the result of the Singaporean action is immaterial to this question. Because we conclude that the district court properly accorded the Singapore Judgment preclusive effect, we need not address this issue.

## IV.    Permanent Injunction

BPS also broadly asserts that the district court erred by permanently enjoining the arbitration between CSCL and BPS. "When reviewing an order granting either a preliminary or a permanent injunction, we review the district court's legal holdings de novo and its ultimate decision for abuse of discretion." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 214 (2d Cir. 2014). We discern no error in the district court's decision.

"Federal courts generally have remedial power to stay arbitration." *Id.* at 213. Specifically, "where the court determines . . . that the parties have not entered into a valid and binding arbitration agreement, the court has the authority to enjoin the arbitration proceedings." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011); *see also Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981) (Breyer, *J.*). As discussed above, the district court properly accorded preclusive effect to the Singapore Judgment, which held that BPS and CSCL had not entered into a valid and binding arbitration agreement. Thus, the district court had the authority to permanently enjoin the arbitration proceeding.

\*      \*      \*

6

We have considered BPS's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7