## LOUIS DREYFUS NEGOCE S.A., Petitioner,

v.

## BLYSTAD SHIPPING & TRADING, INC., Respondent.

### No. 99 Civ. 11128(SAS).

United States District Court,
S.D. New York.

April 28, 2000.

David A. Nourse, Michael E. Stern, Shaun F. Carroll, Katharine F. Newman, Nourse & Bowles, LLP, New York, NY, for Louis Dreyfus Negoce S.A.

Simon Harter, Elizabeth McKenna, Healy & Baillie, LLP, New York, NY, for Blystad Shipping & Trading, Inc.

### *OPINION AND ORDER*

SCHEINDLIN, District Judge.

On February 29, 2000, this Court issued an Opinion and Order denying a motion by petitioner Louis Dreyfus Negoce S.A. ("Dreyfus") for an order: (1) declaring that the claim brought by respondent Blystad Shipping & Trading Inc. ("Blystad") against Dreyfus is not subject to arbitration in New York; (2) staying any further proceedings in the pending New York arbitration; and (3) enforcing a choice of law/choice of forum provision stipulating that Blystad's claim must be brought in London. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.,* 88 F.Supp.2d 168 (S.D.N.Y.2000) (the "Opinion"). Dreyfus now moves this Court, pursuant to Rule 6.3 of the Local Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York, for reconsideration of the Opinion. For the reasons set forth below, Dreyfus' motion for reconsideration is denied.

The Opinion discussed in detail the relevant facts and procedural history; familiarity with that discussion is assumed. *See* Opinion, at 169–172. The legal standard for granting a motion for reconsider-

ation is clear. "The standard for granting ... a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.,* 70 F.3d 255, 257 (2d Cir.1995). Motions for reconsideration must be narrowly construed and strictly applied "to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court," "to ensure finality," and "to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *Range Road Music, Inc. v. Music Sales Corp.,* 90 F.Supp.2d 390, 392 (S.D.N.Y.2000) (quotation marks and citations omitted).

Dreyfus does not dispute the Court's finding that the letters of indemnity are collateral agreements to the Charter. *See* Opinion, at 173–175. Rather, Dreyfus argues that this Court overlooked controlling precedents in reaching the conclusion that Blystad's claims under the letters of indemnity, asserted before the London High Court, are subject to arbitration in New York because those claims "clearly touch matters covered by, and implicate the parties' rights and obligations under, the Charter." Opinion, at 177. According to Dreyfus, two recent Second Circuit opinions have emphasized the importance of deciding whether a particular dispute is subject to arbitration in accordance with the intent of the parties, a principle allegedly overlooked by this Court.

The first case cited by Dreyfus—*Forbes v. Cendant Corporation,* No. 99–9180, 2000 WL 232069 (2d Cir. Jan.28, 2000)—is an unpublished disposition. Because unpublished dispositions "do not constitute formal opinions" of the Second Circuit, they cannot "be cited or otherwise used in unrelated cases before this or any other court." United States Court of Appeals for the Second Circuit, Rules Relating to the Organization of the Court, § 0.23; *see Crocco*

*v. Xerox Corp.,* 137 F.3d 105, 108 n. 4 (2d Cir.1998) (noting that appellants' reference to an unpublished summary order was "entirely improper"); *Rizzo–Puccio v. College Auxiliary Services, Inc.,* 71 F.Supp.2d 47, 60 n. 4 (S.D.N.Y.1999) (admonishing party that cited to an unpublished Second Circuit opinion "to abide by Second Circuit rules in the future"); *Schreter v. Bednosky,* 963 F.Supp. 216, 218 n. 1 (E.D.N.Y. 1997) (noting that court did not rely on defendants' citation to unpublished Second Circuit summary order).

The second case cited by Dreyfus—*Mehler v. The Terminix International Company,* 205 F.3d 44 (2d Cir.2000)—is a published disposition, but it does not warrant reconsideration of the Opinion. In *Mehler,* the Second Circuit first held that an oral agreement for termite extermination services and a subsequent written agreement constituted a unified contract. *See Mehler,* 205 F.3d at 47–49. The Court then concluded that Mehler's claims, ostensibly for breach of the oral agreement, were covered by the broad arbitration clause contained in the written agreement. *See id.* at 50. Dreyfus argues that *Mehler* applied state-law contract principles "in deciding whether the parties agreed to arbitrate a certain matter." *Id.* at 48. But *Mehler* applied those principles in determining whether the oral agreement and the written agreement constituted a unified contract. *See id.* at 47–49. After that step was complete, *Mehler* then employed the same doctrine applied by this Court in determining whether the claims ostensibly brought under the oral agreement related to the written agreement, thereby making those claims arbitrable. *See id.* at 50 (citing *Collins & Aikman Products Co. v. Building Systems, Inc.,* 58 F.3d 16, 21 (2d Cir.1995)); Opinion, at 175–177 (citing same).

■ In its reply brief, Dreyfus argues that this Court erred in applying the *Collins* test to the allegedly narrow arbitration clause at issue in this case. Conceding that this Court relied on *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71 (2d Cir.

1997), which "does indeed state that the reach of a 'narrow' arbitration clause is tested by the 'touch matters' standard elucidated in *Collins*," Dreyfus argues that "a careful reading of *Collins* demonstrates that *WorldCrisa* misconstrued *Collins* [which involved a broad arbitration clause] and that this error has misled this Court." Petitioner's Reply Memorandum in Further Support of Motion for Reconsideration, at 5. This Court is bound by *World-Crisa;* Dreyfus must direct its argument to the appellate court. *See Dodds v. Cigna Securities*, 12 F.3d 346, 353 (2d Cir. 1993) (noting that "[o]nly an in banc court or an intervening Supreme Court decision can overrule" a Second Circuit opinion); *see also Pilarczyk v. Morrison Knudsen Corp.*, 965 F.Supp. 311, 317 n. 3 (N.D.N.Y. 1997) ("[T]his Court is not afforded the luxury of choosing at its leisure which of the Second Circuit's decisions it will follow and which not."), *aff'd*, 162 F.3d 1148, 1998 WL 640447 (2d Cir.1998).

Essentially, Dreyfus argues that this Court ignored the parties' clear intent that disputes arising under the letters of indemnity be resolved in the London High Court, not in a New York arbitration. At the beginning of its analysis, however, the Opinion notes that arbitration agreements should be construed like contracts, because "federal law does not require parties to arbitrate when they have not agreed to do so." *Opinion*, at 172 (quotation marks and citation omitted). After examining the relevant language of both the Charter and the letters of indemnity, the Opinion then states: "The letters of indemnity indemnified Blystad against any claims resulting from the delivery of the goods to Qin Huang Dao; they did not erase Dreyfus' obligation to properly perform its responsibilities under the Charter itself, including

the responsibilities asserted by Blystad in the arbitration." *Id.*, at 176–177. The Court did not overlook the intent of the parties; indeed, the Court has little doubt of the parties' intent that claims arising solely under the letters of indemnity be heard in the London High Court. As the Opinion explained, however, the problem is that "Blystad's asserted claims under the letters of indemnity clearly touch matters covered by, and implicate the parties' rights and obligations under, the Charter." *Id.*, at 177. Under established Second Circuit doctrine, those claims must be arbitrated.[1]

Dreyfus also identifies factual matters that, in its view, were not considered by the Court. Most of this argument falls into the category of "repetitive arguments on issues that have been thoroughly considered by the court." *Range Road Music*, at 391–392 (quotation marks and citations omitted). Dreyfus does note that Blystad may have claims under the letters of indemnity against Lief, the party that intended to purchase the soyabean oil from Dreyfus, that would be brought in the London High Court, raising the prospect of duplicative proceedings and inconsistent results. But this danger is outweighed by the fact that a court should "compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Collins*, 58 F.3d at 19 (quotation marks and citations omitted). Blystad and Dreyfus, unlike Blystad and Lief, are parties to an agreement other than the letters of indemnity—the Charter. Because Blystad's claims under the letters of indemnity touch matters covered by the Charter, which contains an arbitration clause, Blystad's claims against Dreyfus are arbitrable.[2]

---

1. As noted in the Opinion, "I express no opinion as to whether Blystad could assert any claims under the letters of indemnity that do not touch matters covered by the Charter." Opinion, at 178 n. 7.

2. Blystad does point out one error in the Opinion. In the discussion of whether Blys-

tad had waived the right to arbitration, one paragraph begins with the sentence: "Blystad has not waived its right to demand arbitration." Opinion, at 178. The fourth sentence of that paragraph should be amended as follows: "Third, Dreyfus has not demonstrated any prejudice as a result of the London pro-

For all of the reasons stated above, Dreyfus' motion for reconsideration is denied.

SO ORDERED.

ceeding." This change simply replaces "Blys-tad" with "Dreyfus."