[Cite as *Wetli v. Bugbee & Conkle, L.L.P.*, 2015-Ohio-4213.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

John F. Wetli                                    Court of Appeals No. L-15-1009

    Appellant                                Trial Court No. CI0201204952

v.

Bugbee and Conkle, LLP, et al.                   **DECISION AND JUDGMENT**

    Appellees                                Decided:  October 6, 2015

* * * * *

James F. Nooney, for appellant.

Cary Rodman Cooper, for appellees.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

{¶ 1} Appellant, John Wetli, appeals the judgment of the Lucas County Court of

Common Pleas, denying his cross-motion for partial summary judgment and appellees',

Bugbee and Conkle, LLP, Gregory Denny, Tybo Wilhelms, Robert Solt, III, and Robert

King, first and second motions for summary judgment, and staying this action pending arbitration.

## A. Facts and Procedural Background

{¶ 2} The underlying facts in this appeal are undisputed. In December 2007, appellant, a practicing attorney and former partner of the Toledo law firm of Bugbee and Conkle, LLP, entered into a "Third Amended and Restated Limited Liability Partnership Agreement" (hereinafter referred to as the "partnership agreement") with the individual appellees herein, all of whom are also partners at Bugbee and Conkle, LLP. Under the terms of the partnership agreement, each of the five partners owned a 20 percent interest in the property of the law firm. Further, the partnership agreement provides that a partner wishing to retire from the practice of law is entitled to a payment of $100,000 as "full settlement and satisfaction of such [retiring] Partner's interest in Partnership Property." The term "retirement" is defined as "the permanent cessation from the practice of law."

{¶ 3} Subsequent to the execution of the aforementioned partnership agreement, conflicts arose between appellant and the other partners. Eventually, the partners provided appellant with an ultimatum to retire, withdraw from the firm, or face expulsion from the firm. Consequently, appellant sent a letter to the partners on September 2, 2010, indicating that he would be retiring from the firm effective December 2, 2010, and requesting payment of $100,000 as satisfaction of his interest in partnership property pursuant to the terms of the partnership agreement. In his letter, appellant expressed concern over his "forced retirement" and the enforceability of those provisions within the

2.

partnership agreement that required him to permanently cease practicing law in order to receive the $100,000 payment for his interest in partnership property. Specifically, appellant contended that this restriction was unenforceable as an unlawful restriction on his ability to earn a living and a violation of his clients' rights to continued representation by counsel of their choice.

{¶ 4} Appellant reiterated the foregoing concerns in a subsequent letter dated September 17, 2010. Because the partners refused to pay appellant for his interest in partnership property on account of his continued practice of law, appellant demanded arbitration pursuant to paragraph 10 of the partnership agreement.

{¶ 5} Thereafter, the matter proceeded to arbitration for the resolution of a number of issues, including, inter alia, whether appellant voluntarily retired or was forced to do so and whether the restriction requiring appellant to cease practicing law in order to receive his payout for his interest in partnership property was enforceable.

{¶ 6} In his decision, the arbitrator determined that appellant freely chose to retire rather than withdraw from the firm or be expelled by the other partners. Regarding appellant's contention that he was forced to retire, the arbitrator concluded that "the history of discussions and the exchanges between the parties does not support any determination that he was compelled to do so." Concerning the enforceability of the partnership agreement provisions requiring appellant to cease practicing law in order to receive the $100,000 payout for his interest in partnership property, the arbitrator stated:

3.

The language conditioning the $100,000.00 payment on the permanent cessation from the practice of law improperly restricts a lawyer's ability to practice law after termination of the partner relationship. It also improperly prohibits a client from choosing a lawyer of the client's choice. * * * As a result, the provision requiring the permanent cessation from the practice of law cannot be enforced without violating rule 5.6 of the Ohio Rules of Professional Conduct. The provision is invalid and unenforceable.

The arbitrator went on to examine the severability of the unenforceable language from the remaining retirement provisions within the partnership agreement.[1] He ultimately found that the retirement provisions including the provision entitling retiring partners to a $100,000 payout for their interest in partnership property, were unenforceable in their entirety, reasoning that "[t]here is no way to excise the offending language while still retaining the retirement option when the retirement option is expressly conditioned on the permanent cessation from the practice of law."

{¶ 7} Thereafter, on December 20, 2011, appellant filed an "application for order confirming arbitration award and entering judgment thereon." On January 24, 2012, the trial court confirmed the arbitrator's decision. Following the confirmation of the arbitrator's award, appellant sent a letter to the remaining partners, demanding payment for his interest in the partnership pursuant to R.C. 1776.54. Having received no such

---

[1] The partnership agreement does not contain a severability clause.

payment over the five months that followed, appellant filed his complaint in this case, seeking judicial determination of the buyout price of his interest in the partnership as of December 2, 2010, and an award against appellees in that amount.

{¶ 8} Two months after the complaint was filed, appellees filed an answer, in which they asserted that appellant's statutory claims for the payment of his partnership interest were barred by res judicata and collateral estoppel. Alternatively, appellees alleged that appellant's claims were subject to mandatory, binding arbitration under Section 10 of the partnership agreement. Thus, in the event the trial court found that the claims were not barred by res judicata and collateral estoppel, appellees insisted that the matter should be referred to arbitration.

{¶ 9} Thereafter, on November 13, 2012, appellees filed their motion for summary judgment, arguing that appellant's statutory claims in the present case could have and should have been raised in the prior action involving the enforceability of the retirement clauses within the partnership agreement. Thus, appellees reasoned that appellant's action was barred by the doctrine of res judicata.

{¶ 10} In response to appellees' motion for summary judgment, appellant, on December 11, 2012, filed his memorandum in opposition along with his own motion for partial summary judgment. In his motion for partial summary judgment, appellant argued that he was entitled to a valuation of his 20 percent ownership interest in Bugbee and Conkle, LLP under R.C. 1776.54, and a judgment ordering appellees to pay him the estimated amount of the buyout price of his interest in the firm, together with interest,

5.

attorney's fees, and the fees and expenses of appraisers and other experts. Appellant also sought an order requiring appellees to provide him with a statement of partnership assets and liabilities as of the date of his retirement, along with a current balance sheet and income statement. In his memorandum in support of his motion for partial summary judgment and in opposition to appellees' motion for summary judgment, appellant argued that his statutory claims were not barred by res judicata because they were not, and could not have been, raised in the prior arbitration.

{¶ 11} Subsequent to the filing of appellant's motion for partial summary judgment, appellees filed another motion for summary judgment, this time arguing that they were entitled to judgment because appellant's claims were not timely filed within the applicable one-year statute of limitations under R.C. 1776.54(I)(1). Appellant responded by asserting that his statutory claims were timely filed within two months of the judicial confirmation of the arbitrator's decision striking the retirement provisions from the partnership agreement. According to appellant, the statutory claims could not have been asserted before the retirement provisions were deemed unenforceable since the Uniform Partnership Act only serves as a set of default rules that are triggered when the partnership agreement is silent on a particular issue.

{¶ 12} On December 22, 2014, the trial court issued its decision on appellant's motion for partial summary judgment and appellees' first and second motions for summary judgment. In its decision, the court found that the doctrine of res judicata was inapplicable. The court reasoned that appellant could not have brought his statutory

6.

claim in the prior litigation because his contractual claim was his sole remedy. The court noted that the Uniform Partnership Act only governs disputes where the partnership agreement does not otherwise control. Because the partnership agreement contained a provision governing appellant's buyout, the trial court found that appellant could not assert his statutory claim until that provision was deemed unenforceable. Thus, the court denied appellees' first motion for summary judgment.

{¶ 13} In addition to the foregoing, the trial court examined whether appellant's statutory claims, along with appellees' defenses to those claims, were subject to the arbitration provisions contained in the partnership agreement. The court found that the claims and defenses were subject to arbitration, stating:

> [Appellant's] statutory claim is subject to the arbitration clause contained in the Agreement because it is a controversy related to his rights under the partnership relationship and cannot be maintained without reference to the Agreement. * * * In order to determine the merits of [appellant's] claim and calculate any amount owed to him, the Court would have to determine the value of the Partnership assets, which would include the Partnership Property. *See* R.C. 1776.54(B)(1)(a). The record evidence shows that Paragraph 1 of the Agreement * * * defines Partnership Property.

> * * *

7.

Accordingly, to calculate the buyout price of any amount owed to [appellant] following his retirement, the Court would necessarily need to look to the Agreement to define the Partnership's assets and determine their value at the time of [appellant's] disassociation.

{¶ 14} Having found that the remaining issues were subject to arbitration under the partnership agreement, the trial court denied appellant's motion for partial summary judgment and appellees' second motion for summary judgment, and ordered the case stayed pending completion of arbitration proceedings. Thereafter, appellant filed his timely notice of appeal.

### B. Assignment of Error

{¶ 15} On appeal, appellant assigns the following error for our review:

THE TRIAL COURT ERRED IN REFERRING APPELLANT'S (WETLI'S) STATUTORY RIGHT TO A BUYOUT OF HIS INTEREST IN PARTNERSHIP PROPERTY, AND APPELLEES' (THE FIRM'S) TIME LIMITATION DEFENSE THERETO TO ARBITRATION, AND IN FAILING TO ENTER PARTIAL SUMMARY JUDGMENT ESTABLISHING WETLI'S STATUTORY RIGHT TO A BUYOUT OF HIS INTEREST IN PARTNERSHIP PROPERTY AND DIRECTING THE FIRM'S PAYMENT TO WETLI OF THE FIRM'S ESTIMATE OF THE BUYOUT PRICE PLUS INTEREST.

8.

## II. Analysis

{¶ 16} In appellant's sole assignment of error, he argues that the trial court erred in denying his motion for partial summary judgment and staying the case pending arbitration. Appellant advances several arguments in support of his contention that the trial court erroneously denied his motion for partial summary judgment. However, we note that the trial court's reluctance to examine the merits of appellant's claims concerning the buyout of his partnership interest stemmed from its finding that such claims are subject to arbitration under paragraph 10 of the partnership agreement. The United States Supreme Court has previously held that, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Thus, we must determine whether appellant's claims are subject to arbitration prior to examining the merits of those claims.

{¶ 17} We review the question of whether, as a matter of law, a particular claim is subject to arbitration under a de novo standard of review. *Hussein v. Hafner & Shugarman Ents.*, 176 Ohio App.3d 127, 2008-Ohio-1791, 890 N.E.2d 356, ¶ 23; *see also Rippe & Kingston Co., PSC v. Kruse*, 1st Dist. Hamilton No. C-130587, 2014-Ohio-2428, ¶ 20 ("Whether a controversy is arbitrable under a contract requires the court to invoke principles of contract interpretation, and thus presents a question of law, which we review de novo."). Because arbitration is a matter of contract, a party may only be forced

9.

to arbitrate a dispute that it has agreed to submit to arbitration. *Taylor v. Ernst & Young, LLP*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20. Nevertheless, a presumption in favor of arbitration applies to claims that are within the scope of an arbitration provision. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998).

{¶ 18} In the case sub judice, the partnership agreement contains the following arbitration provision:

> 10. Arbitration.
>
> If any controversy or difference shall arise between the parties hereto with respect to the interpretation or effect of this agreement, or the rights, obligations or liabilities of the parties hereunder, or otherwise, then each and every such controversy or difference shall be submitted to and settled by arbitration in accordance with the Arbitration Rules of the Toledo Bar Association's Alternate Dispute Resolution Program then in effect, or if not then in effect, pursuant to Chapter 2711 (Arbitration) of the Ohio Revised Code.

{¶ 19} Here, appellant argues that the parties to the partnership agreement could not have intended to arbitrate his statutory claims under R.C. 1776.54, since such claims were superseded by the retirement provisions in the agreement that have since been deemed unenforceable. Thus, appellant concludes that he "cannot be required to arbitrate

10.

disputes which neither he nor the Firm specifically agreed to, anticipated or intended to submit to arbitration at the time they entered into the [partnership agreement]."

{¶ 20} "When courts interpret the meaning of disputed contractual provisions, they must presume the intent of the parties is reflected in the language drafted into the agreement." *Brinkman v. State Farm Mut. Auto. Ins. Co.*, 6th Dist. Lucas No. L-05-1224, 2006-Ohio-727, ¶ 12, citing *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. "A contract, such as an arbitration agreement, that is clear and unambiguous, requires no real interpretation or construction and will be given the effect called for by the plain language of the contract." *Locum Med. Group, L.L.C. v. VJC Med., L.L.C.*, 8th Dist. Cuyahoga No. 102512, 2015-Ohio-3037, ¶ 11, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989).

{¶ 21} In examining whether an arbitration provision encompasses statutory claims, we must first consider whether the provision itself or the statute at issue contains limitations as to arbitrability. *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 17. If the parties expressly removed statutory claims from the scope of the arbitration provision, or the General Assembly "evinced an intention to preclude a waiver of judicial remedies for the statutory rights" created by the Uniform Partnership Act, appellant's claims would fall outside the scope of the arbitration agreement. *Id.*, citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444

11.

(1985). However, the parties in this case did not remove statutory claims from the scope of the agreement, and the Uniform Partnership Act does not preclude a waiver of judicial remedies for the rights it creates. Thus, we must look to the language of the arbitration provision to determine whether it limits itself to certain aspects of the partnership agreement.

"To determine whether the claims asserted in the complaint fall within the scope of an arbitration clause, the Court must 'classify the particular clause as either broad or narrow.' *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.2001). An arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered 'the paradigm of a broad clause.' *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 20 (2d Cir.1995)." *Academy of Medicine of Cincinnati* at ¶ 18, quoting *ADR/JB, Corp. v. MCY III, Inc.* (E.D.N.Y.2004), 299 F.Supp.2d 110, 114.

{¶ 22} Upon examination, we find that the arbitration clause in this case is broad in its scope. Indeed, the clause applies to "each and every" controversy arising between the parties, including those concerning the rights, obligations or liabilities of the parties on matters arising out of the partnership agreement, or otherwise. This provision is clear and unambiguous. Under its plain language, all disputes between the parties that arise under the partnership agreement are subject to arbitration. Further, we agree with the trial court's conclusion that the litigation of appellant's statutory claims under the

12.

Uniform Partnership Act will necessarily implicate provisions in the partnership agreement. Under R.C. 1776.03(A), the partnership agreement "governs relations among the partners and between the partners and the partnership. *To the extent the partnership agreement does not otherwise provide*, this chapter governs relations among the partners and between the partners and the partnership." (Emphasis added.) Here, appellant seeks the buyout of his interest in the partnership under R.C. 1776.54. In order to calculate the amount owed to appellant, the value of the partnership assets must first be determined. R.C. 1776.54(B)(1)(a). In turn, whether a particular asset is a partnership asset is set forth in the partnership agreement, which defines partnership property. Thus, in order to identify and value appellant's interest in partnership property, the property itself must first be identified, which will require the application of the definition of partnership property found within the partnership agreement.

{¶ 23} In light of the breadth of the arbitration provision at issue in this case, we find that the trial court did not err when it concluded that the claims raised in this case are subject to arbitration. Having concluded that appellant's claims are subject to arbitration under the partnership agreement, we do not reach appellant's remaining arguments concerning the merits of his claims. *See AT&T Technologies, Inc., supra*, 475 U.S. at 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.").

{¶ 24} Accordingly, appellant's sole assignment of error is not well-taken.

13.

## III. Conclusion

**{¶ 25}** Based on the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs are hereby assessed to appellant in accordance with App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Stephen A. Yarbrough, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.